152      KENTUCKY REPORTS.      [Vol. 98

The Kentucky Wagon Manufacturing Co. v. Ohio & Mississippi Railway Co.

CASE 29—PETITION EQUITY—OCTOBER 17.

# The Kentucky Wagon Manufacturing Company v. Ohio & Mississippi Railway Company.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. CARRIERS—CAR SERVICE ASSOCIATIONS.—There may be a reasonable charge by a common carrier for the detention of its cars by the consignee or consignors beyond a reasonable time in which to load and unload them; and such charges may be imposed and enforced through what are known as car service associations, two or more carriers having the right to combine in that way and promulgate and enforce reasonable rules and regulations for the accomplishment of the desired object, all having the right to do jointly what each might do separately.

2. SAME—REASONABLENESS OF RULES.—Whether a charge of one dollar per day or fraction thereof made for detention of cars and use of track on cars not unloaded within forty-eight hours after arrival, not including Sundays and legal holidays, and on empty cars not loaded within forty-eight hours after being placed, is a reasonable charge, and the time fixed for loading and unloading is a reasonable time, are questions of fact, and on these issues in this case the preponderance of the proof is with the carriers. And it is no objection to such a rule that no exception is made in behalf of the shipper by reason of an unfavorable condition of the weather, as the rule must in the first instance allow time enough to meet all cases likely to arise, which is shown to be the case here.

3. SAME.—If the rules of such an association are reasonable, the fact that the shipper was not consulted in framing them does not vitiate them. Nor can the shipper complain that no counter penalties are provided, the carrier being accountable under well established legal principles for any dereliction of duty.

4. SAME.—The rule fixing a uniform charge for the detention of cars does not violate the law preventing agreements among rival carriers not to compete with each other.

5. SAME.—The fact that under the car service rules the delivering road is authorized to collect storage charges on cars received from connecting lines affords no ground of complaint to the shipper, the company having the right under the universal practice among carriers to use and control such cars as its own property.

The Kentucky Wagon Manufacturing Co. v. Ohio & Mississippi Railway Co.

6. SAME—INJUNCTION.—While common carriers, members of a car service association have no right to refuse to receive freight from, or switch cars for, a shipper because he owes to them or to other members of the association car service fees which he refuses to pay, or because he and other shippers have combined to resist the enforcement of the reasonable rules of the association, yet a shipper thus in default can not ask the aid of a chancellor to compel the carrier to do that which it admits it is its duty to do, and which it is willing to do upon a compliance on the shipper's part with the reasonable rules of the association. The shipper having done the first wrong and thus caused the wrong-doing of the carrier, the chancellor may refuse to hear him. And, especially so, when, as in this case, the delivery of the specific cars withheld by the carrier was accomplished by the issual of a mandatory injunction when the petition was filed.

7. SAME.—If upon any particular shipment storage charges have accumulated before it is unloaded by the consignee, and it is still in the car of the carrier, it may be retained until the regulation is complied with and the charges paid.

W. O. HARRIS AND HUMPHREY & DAVIE FOR APPELLANT.

1. The defendants are bound to deliver cars on plaintiff's switch. (2 Rorer on Railroads, 1225-6; Vincent v. C. & A. R. R. Co., 49 Ill., 35; Chicago Dock Co. v. Garrity, 115 Ill., 156; Peru R. Co. Case, 109 Ill., 135.)

2. This obligation is enforceable by injunction. (2 Rorer on Railroads, 1226; High on Injunctions, sec. 621; Coe v. L. & N. R. Co., 3 Fed. Rep., 775.)

3. There is no lien for former demurrage charges, and hence no right of detention. (Hutchinson on Carriers. secs. 474, 477, 478; Wright v. Snell, 5 Barn. and Ad., 350; Railroad v. Jenkins, 103 Ill., 588; Railroad v. Chicago Lumber Co., 15 Neb., 391; Crommelin v. N. Y. R. Co., 4 Keyes, N. Y., 90.)

4. The car service agreement is intended to restrain competition, and is void. (Anderson v. Jett, 89 Ky., 375; Huston v. Reutlinger, 12 Ky. L. R., 925; Morris Run Coal Co. v. Barday, 68 Pa. St., 173; Samuel v. Oliver, 130 Ill., 73; Leonard v. Parle, 114 N. Y., 371; Arnett v. Pittston Coal Co., 68 N. Y., 558; Richardson v. Ruhl, 77 Mich., 632; Ford v. Grayson, 7 Mont., 89; Santa Clara Mill v. Hay, 76 Cal., 387.)

5. All agreements placing a corporation under the control, however slight, of other corporations or of individuals other than its own officers are void.     (Morawetz on Corporations, secs. 229, 220;

154          KENTUCKY REPORTS.          [Vol. 98

The Kentucky Wagon Manufacturing Co. v. Ohio & Mississippi Railway Co.

People v. North River Sugar Ref. Co., 121 N. Y., 582; Gulf T. & S. F. R. Co. v. The State, 72 Tex., 411.)

6. Pooling arrangements and like agreements fixing rates or restraining competition among common carriers or other public servants are void without regard to the reasonableness of the rate. (Anderson v. Jett, 11 Ky. L. R., (89 Ky., 375); Gibbs v. Baltimore Gas Co., 130 U. S., 396; Tex. Pac. R. v. Sou. Pac. R., 41 La. Ann.,97; s. c., 40 Am. & Eng. R. R. Cases, 475.)

7. The rate of demurrage fixed by the car service agreement is unreasonable. (5 Am. & Eng. Enc. of Law, pp. 546, 547, 548; Fish v. One Hundred, &c., 20 Fed. Rep., 201.)

8. The fixing of this "penalty" for not paying the demurrage charges in advance of a trial in court to test their correctness, is intended to oust the courts of their lawful jurisdiction; and is void as against public policy. (Kister v. Indianapolis R. Co., 88 Ind., 460; 1 Redfield on Railways, 454; Stevenson v. Insurance Co., 54 Maine, 69.)

E. F. TRABUE FOR APPELLEE, Ohio & Mississippi Railway Company.

1. Forty-eight hours is a reasonable time to load and unload. The question of a reasonable time is to be determined in connection with the time required by shippers generally, supplied with the proper appliances for unloading. (Woods v. Crocker, 86 Am. Dec., 770; Harris v. L. & N. R. Co., MS. Op., by Bowden, J., 1885.)

2. The railroad company has the right to make a charge for detention and the charge fixed by the rule in question here is reasonable. (Miller v. Mansfield, 112 Mass.)

3. Car service associations are not illegal. (Dickerman v. St. Paul Union Depot Co., 4 A. & E. R. Cases, 597; Mogul Steamship Co., v. McGregor, L. R., 21, 2 B. Div., 544; M. & L. R. Co. v. Concord R. Co., 2 Atl. Rep., 383; 11 Railway & Corporation Journal, January 30, 1892; 50 Am. & Eng. R. Cases, 88.)

4. The fact, if it were true, that defendants enforced the rule because they had agreed with others to do so would not make illegal such enforcement. If a party have a right to do any act, his motive can not take away that right. (Chambers v. Baldwin, 91 Ky., 121; Bourlier v. Macauley, 91 Ky., 135.)

4. By a fair construction of the contracts between the plaintiff and the Louisville Southern Railroad Company they should be held to be subject to the reasonable rules and regulations of the railroad companies, just as the contract which a passenger makes with the company in purchasing his ticket is held to be subject to the rules and regulations of the carrier. But, if upon strict construction such rules and regulations were not a part of

The Kentucky Wagon Manufacturing Co. v. Ohio & Mississippi Railway Co.

said contract, and plaintiff had a right of action for damages for failure to deliver cars under the contract, still the chancellor would not enforce the contract at the suit of one invoking his jurisdiction under such circumstances as does plaintiff in this case. (Nash v. Page, 80 Ky., 539; Willard v. Taylor, 8 Wall., 557.)

5. But the contract in this case is not enforceable in equity at all. (A., T. & S. F. R. Co. v. D. & N. O. R. Co., 110 U. S., 667; Shelbyville R. Co. v. L., C. & L. R. Co., 82 Ky., 541; City of St. Thomas, v. Credit Valley R. Co., 12 Ont. App., 273; s. c., 18 Am. Rep., 142; Blanchard v. Detroit, &c., R. Co., 31 Mich., 43; s. c., 18 Am. Rep., 142; Blacket v. Bates, L. R.,1 Ch. App., 117; Powell Duffoyn Steam Coal Co. v. Taffrale Ry. Co., L. R., 9 Ch'y App. Cases, 335; Pullman, &c., v. T. & P. R. Co., 11 Fed. Rep.; Marble Co. v. Ripley, 10 Wall., 339; A. & W. P. R. Co. v. Speer, 32 Ga., 550; s. c., 79 Am. Dec.; T. & P. Railway Co. v. City of Marshall, 136 U. S., 393.)

LYTTLETON COOKE FOR APPELLEE, Louisville & Nashville Railroad Company.

1. The car service rules are reasonable and should be enforced. (Miller & Co. v. The Georgia R. Co., 15 S. E. Rep., 316; Miller v. Mansfield, 112 Mass., 260.)

2. Conceding, for the sake of argument, the court's power to enforce specific performance of the contract sought to be enforced, it should not do so in the face of the overwhelming proof of *appellant's bad faith* and unreasonable and unjust detention of the cars delivered to it.

BULLITT & SHEILD, GIBSON, MARSHALL & LOCHRE AND HELM & BRUCE, OF COUNSEL FOR APPELLEES.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The Kentucky Wagon Company is a corporation extensively engaged at South Louisville in the business of manufacturing and selling wagons. Its works are located near the junction of the tracks of the Louisville & Nashville and the Louisville Southern railroad companies, and upon its yards it has its own switches and side tracks, connecting with each of these roads and with these roads alone. It receives its materials in car-load lots, and sends out much of the finished

product in the same way. These railroad companies, the one or the other, have physical connection with every other railroad entering the city of Louisville, and are under contract with the wagon company, for a stipulated consideration, to deliver upon the side tracks of the latter all loaded cars consigned to that company over their own lines, or over their connecting lines, which cars, when unloaded by the wagon company, the carriers are to remove free of charge.

In February, 1890, the two roads named, together with the other railways entering the city of Louisville, conceiving that their patrons who handled their shipments in car-load lots were unreasonably detaining the cars of the carriers, using them for storage purposes and otherwise materially impeding the service, formed what is known in the record as the Louisville Car Service Association, and through it at once promulgated certain rules and regulations calculated to remedy the evil and insure the prompt unloading of the consignments and consequent prompt return of the cars.

On the other hand, the shippers conceding that the abuse complained of had in fact grown up, though not through their fault, and contending that the association of the carriers was illegal and wrongful, and the rules they were attempting to enforce unreasonable and exorbitant, formed a counter-association to resist their enforcement. The wagon company was a member of this organization, and refusing to conform to the rules of the car service association or pay the charges accumulating against it by reason of its detention of cars for more than forty-eight hours after delivery, the carriers refused to deliver freight consigned to it over their respective lines.

Thereupon, in November, 1890, the wagon company brought this action in equity against some eleven of the

railroad companies to restrain them from refusing to deliver to it on its side tracks, because of its non-compliance with the car service rules, certain designated car loads of freight ready for delivery, and from so refusing in the future.

The original order which issued on the plaintiff's petition enjoined the defendants from further refusing to deliver to the plaintiff the carloads of freight held by them respectively, but thereafter, in August, 1891, and after much of the proof had been taken, the court so modified the order as to require the wagon company to return and redeliver to the railway companies the cars delivered by them within the time prescribed by the car service rules; and such seems to have been the attitude of the parties upon the rendition of the final judgment herein in December, 1891, when the chancellor refused to grant the relief asked by the plaintiff, dissolved the injunction and dismissed the petition without costs.

The question to be determined at the threshold of our investigation of this case is whether or not the rules and regulations of the associated defendants are reasonable and just, and such as the plaintiff ought to have regulated its business by. Whether, if reasonable, the carriers might enforce them by a combination or association, and whether, however reasonable the rules may be, and however wrongful may have been the action of the defendants in resisting them, the carriers could lawfully refuse to deliver the freight consigned to the owners, are questions to be considered further along, as is the question whether, conceding the refusal of the carriers to deliver the freight to have been wrongful, the plaintiff is in an attitude to ask the chancellor to right the wrong by compelling an unconditional delivery of the cars to it.

158          KENTUCKY REPORTS.          [Vol. 98

The Kentucky Wagon Manufacturing Co. v. Ohio & Mississippi Railway Co.

The rules of the association are of great length, and need not be recited in detail. A discussion of the grounds upon which the appellant seeks to impeach them will sufficiently indicate their nature and purpose. Those grounds, as carefully grouped by the learned chancellor, are as follows:

"1st. That the period of 48 hours, which, computed under car service rules, extends to near 60 hours, within which it is required to unload said cars after delivery, is too short.

"2d. That the demurrage charge of a dollar per day per car for the detention of cars after the expiration of said 48 hours is exorbitant and excessive.

"3d. That neither the plaintiff nor any other shipper or consignee was consulted by the defendants in the framing of said rules, and that neither it nor any other shipper or consignee has any voice in the selection and appointment of the manager or committee of the car service association.

"4th. That there is no reciprocity of indemnity and counter-penalty in said rules in favor of plaintiff and other shippers and consignees against the defendants for not promptly performing their duties as common carriers.

"5th. That the defendants, by entering into the car service association, have surrendered their corporate autonomy and functions, and relegated the control and management of their business as common carriers to the arbitrary control of the manager and committee of the car service association, and have thereby agreed to abolish competition, and that for this reason the said rules are illegal.

"6th. That under the car service rules a delivering railroad company is authorized to demand demurrage charges on cars that do not belong to it but to other companies."

That there may be a reasonable charge for the detention of the carrier's cars by the consignee or consignor beyond a

The Kentucky Wagon Manufacturing Co. v. Ohio & Mississippi Railway Co.

reasonable time within which to load and unload them can not now be doubted, and that such charges may be imposed and enforced through what are known over the country as car service associations is equally well-settled.

A few cases only had arisen in the courts prior to the institution of this action, but several have since been considered, and we know of no exception to the general doctrine that reasonable rules, involving charges for such detention, may be promulgated by such associations, and that such organizations have universally been held to effect beneficial results in car service, alike to the shipper and to the carrier.

Whether a charge of $1 per day or fraction thereof made for detention of cars and use of track on cars not unloaded within forty-eight hours after arrival, not including Sundays and legal holidays, and on empty cars not loaded within forty-eight hours after being placed, is a reasonable charge, and the time fixed for the loading and unloading, as required in the rule, is a reasonable time, are questions of fact, and on these issues the preponderance of the proof is clearly with the carriers. Such was the finding of the chancellor at the hearing of the motion for a modification of the injunction and his conclusion at the final hearing, and such was the opinion of the judge of this court as to the reasonableness of the time for re-delivery when the case was heard on a motion to re-instate the injunction after its modification.

Such, indeed, has been the determination of every tribunal where a similar provision has been adopted by the various car service associations of the country, nor has it been found objectionable to the courts because no exception is made in behalf of the shippers by reason of an unfavorable condition of the weather.

The rule, to be beneficial to all alike, must be of universal application, and a rare or exceptional circumstance, incident to a particular shipper at some particular time, can not be allowed to annul the rule. The rule must allow time enough to meet all cases likely to arise, and that such is the case here is abundantly shown by the testimony.

That the rate of $1 per day is also reasonable is conclusively shown. It may be somewhat more than the usual per cent. on the first cost of a car, but this is not the proper criterion. A railroad company does not construct cars for the purpose of storing property in them, and their use for transportation involves the use of costly railway tracks and other expenditures.

It may be true, as contended, that the shipper was not consulted in framing these rules. We think, however, if the rules are reasonable, this fact does not vitiate them. No complaint is made that there was an attempt to enforce them before ample notice had been given of their adoption. So, too, if the rules are reasonable, the fact there is no reciprocity of indemnity or counter-penalties provided can not avail the appellant.

If there is any principle of the law well understood by shippers it is that, for any dereliction of duty, the common carrier may be held accountable; nor do we think that the roads surrendered their corporate autonomy and functions by relegating the control and management of their affairs to the control of the association. If the rules may be enforced by the respective carriers in their separate capacities they may be enforced by them jointly. In the executive committee of this voluntary association each road has its representative, and the rules adopted by the association are accepted by the carriers and become their own rules. What

the carriers may each do for themselves they do by a common agent. This practice is common where union depots are under the control of a common agent of all the roads using the depot.

It is true that the rule involves the agreement of the roads to make their charges uniform, and this is supposed by counsel to be in violation of the law preventing agreements among rival carriers not to compete with each other.

We do not regard the principle contended for as applicable to this case. Manifestly the object of the rule fixing a uniform charge for the detention of cars is not for the purpose of raising revenue at all. That feature is insignificant, the purpose being to facilitate transportation, and the less revenue there is derived from the enforcement of the charge the greater the carriers are benefited and their facilities increased for serving the public. The agreement in this case to fix a uniform rate is an advantage and not an injury to the appellant and its associates.

It is said, further, that under the car service rules the delivering road is authorized to collect storage charges on cars that do not belong to it but to other companies. This, if true, would not seem to be material to the appellant, but it is only true in a qualified sense. The universal practice among carriers is that, instead of the railroad company which first handles the shipment, unloading it at its terminal point, thus necessitating a transfer to a connecting line to be forwarded to its destination, the cars containing the freight are delivered to the connecting line, and the line takes charge of and uses and controls the car so received as its own property. It keeps it in repair while so using it as it does its own cars, and under a mutual and universal custom is entitled to all its earnings. Certainly no custom

or regulation is more beneficial to shippers than this, for otherwise a transfer must be made at each terminal point of the carrier.

The assumption is that this interchange of cars will work out equal advantages to all, but to still further equalize the earnings an account of the mileage is taken, and the road using the car renders an account to the road in fact owning it on the basis of three-quarters of a cent a mile so run.

We are convinced, therefore, that no valid objection can be urged against the enforcement of these rules of the appellees as announced through this association. They not only commend themselves to the reason and common experience of those observant of such matters, but, as we have indicated, they have found approval at the hands of a number of the courts of the country, and we may add of a number of State boards of railroad commissioners, whose business has been to carefully investigate such questions in behalf of the general business public. (Miller & Co. v. Georgia R. Co., 88 Ga., 563, 18 L. R. A., 323; Miller v. Mansfield, 112 Mass., 260; Chicago, Milwaukee & St. Paul Ry. Co. v. Pioneer Land Co., (1892) Iowa; Beach's Ry. Law, section 924; Union Pacific, &c., R. Co. v. Cooke [1892, Colorado], 50 Am. & Eng. R. Cases, 89, note.)

Admitting all this, the question remains: Is the refusal of the appellant and its associates, even acting as they did under a combination to resist the enforcement of these reasonable rules, a legal excuse for the carrier's refusal to deliver freight cars on the appellant's side tracks and switches?

If upon any particular shipment storage charges accumulated before it was unloaded by the consignee, and it was still in the car of the carrier, we see no reason why it might

not be retained until the regulation be complied with and the charges paid. The carrier undoubtedly has a lien on the freight while in his control, and can not be compelled to surrender his security; but if he delivers the freight without collecting the car service fee, can it be said that he may refuse to do his duty as a common carrier and decline to deliver freight subsequently consigned? If a passenger owe a former bill to the railway, can he be turned away when he tenders his ticket for the trip he is then about to take?

The car service fees in this case were due only to two of the carriers, and, if the excuse offered were valid, the other appellees were without even that. The appellant owed them nothing; but the plea is wholly insufficient as an excuse for any of the carriers. They occupy the same attitude, and it is wholly immaterial whether they had or had not demands arising out of the failure of the appellant to pay the arrearages for the car service. It was the duty of the roads not in connection with the appellant's yards to deliver the freight consigned to it to the roads which were in such connection, and the duty of those roads to receive it and deliver it to the appellant.

The right of the carriers to thus decline to switch cars for those who refuse to pay the bills for car service, as defined in the rules of the association, is made the basis of earnest argument by counsel for appellant that such an unreasonable regulation itself affords ample excuse for the appellant's combination to resist the enforcement of the rules. But is observable that the enforcement of this rule is made to depend on the refusal of the consignee to comply with the regulations.

The conditions upon which it may be put in force can not exist except at the will of the shipper. He must first wrong-

164                KENTUCKY REPORTS.                [Vol. 98

The Kentucky Wagon Manufacturing Co. v. Ohio & Mississippi Railway Co.

fully refuse to comply with the rules before any excuse is given the carrier to do the second wrong, and we think the appellant can not complain of the wrongdoing of the carrier, made possible by his own wrongful refusal to comply with other reasonable regulations of the carrier. And this brings us to a consideration of the question: Is the appellant in an attitude to ask the aid of a chancellor to compel the carrier to do that which it admits is its duty to do, and which it is willing to do, upon a compliance on appellant's part with the reasonable rules of the association?

Of the two wrongdoers, we have seen that the appellant was the first; and upon ample authority the chancellor may refuse to hear him. Especially so when the delivery of the specific cars withheld by the carriers was accomplished upon the issual of the mandatory injunction when the petition was filed. The carriers obeyed the order to deliver, so that no injury in that particular case accrued to the appellant by withholding the relief sought.

In Nash, &c. v. Page, &c., 80 Ky., 539, the complainants, who were tobacco buyers, withdrew from the board of trade because the warehousemen, also members of the board, were charging them too much. They resolved in a body not to buy from the warehousemen until the latter should accede to their demands. In doing this they acted in violation of the rules of the board. The warehousemen subsequently and illegally refused them admittance to their rooms, and the chancellor was asked to compel such admission. This court said: "We have already adjudged that all have the right, upon payment of reasonable fees and charges, to enter these public warehouses, * * * * nor do we determine that such a right does not belong to the appellants; but while this right exists, it does not follow that the chancellor will undertake to

The Kentucky Wagon Manufacturing Co. v. Ohio & Mississippi Railway Co.

grant relief by injunction when the one party is as much in fault as the other." And the judgment below dismissing the petition was affirmed.

This can not result, as feared by counsel, in putting the proper control and regulation of the business relations of these carriers with their patrons beyond the power of the courts, or relegate the grievances of shippers to the mercy of the carrier. Doubtless the appellant has paid to these carriers bills of freight to the extent of thousands of dollars and not a few of them inaccurate. If these inaccuracies and errors were not corrected and the carrier made to adjust them, it was certainly not because the courts were not open to its complaints.

If the rules of the association provide, as they seem to do, an easy remedy for the settlement of conflicting claims among the parties interested, it is to be regarded only as an additional mode of adjusting these inevitable differences to the slower processes of the law. As suggested in the Nash-Page case, it may be expected that the personal and mutual interests of the parties in securing a prompt and satisfactory car service, so important to all, will certainly lead them to a fair adjustment of their differences without the aid of the chancellor.

Judgment affirmed.