# Pennsylvania Railroad Company, Appellant, *v.* Midvale Steel Company.

*Common carrier—Railroads—Delay of cars—Demurrage—Affidavit of defense.*

A railroad company has an unquestioned right as a common carrier to make reasonable rules to speed the unloading of its cars; cars are for the transportation of freight, not for its storage.

It is a reasonable regulation of a railroad company, as a common carrier, to provide by its rules that "a charge of one dollar shall be imposed for car service for and upon each car carried over any portion of its line of railroad not unloaded by the consignee within forty-eight hours from the time said car arrived at the destination thereof, ready for delivery to such consignee, for each day or part of day after said forty-eight hours, not including Sundays and legal holidays, during which said car should remain unloaded, the said charge being payable by the consignee or person receiving the car."

Where a regulation of a common carrier is obviously reasonable upon its face, it is not necessary for the court to instruct the jury to find it so as a fact.

There is no duty on a common carrier to consult either its shippers or consignees as to the wisdom of its rates of freight for carrying, or rules for demurrage; as to the one, it cannot exceed a lawful rate, as to the other, it cannot exceed a reasonable charge. Within these bounds it is presumed in the interest of its stockholders and the public properly to conduct its own business.

In an action by a railroad company for demurrage, the defendant cannot allege as a defense that it had no knowledge of the regulation relating to demurrage, and this is especially the case where it appears from defendant's own admission that bills for violation of the rule had for months been regularly rendered.

In an action by a railroad company to recover demurrage for the detention of cars, where the plaintiff's statement contains a complete copy of its accounts, giving car initials, number, contents, exact hour of arrival, date of release, number of days detained, and amount of charge, an affi-

davit of defense is insufficient which shows on its face that the defendant had accurate accounts of the movements of the car, and which merely avers that the detention of a large number of the cars caused by reloading was embraced in the charge of delay in unloading, without specifying the cars thus detained by reloading.

Argued Jan. 21, 1902. Appeal, No. 142, Jan. T., 1900, by plaintiff, from order of C. P. No. 4, June T., 1899, No. 59, Phila. Co., discharging rule for judgment for want of a sufficient affidavit of defense in case of Pennsylvania Railroad Company v. Midvale Steel Company. Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Assumpsit to recover demurrage for detention of cars.

Rule for judgment for want of a sufficient affidavit of defense.

The affidavit of defense was as follows:

The defendant has no knowledge of the facts stated in the plaintiff's declaration that prior to 1893, or at any time subsequent thereto, the plaintiff had established a rule relating to demurrage charges as in said statement set forth. The defendant asks that the plaintiff be compelled to make proof of said rule or regulation if its existence be deemed material.

Even if said rule or regulation was established by the plaintiff prior to 1893 or subsequent thereto, the deponent avers that no notice of the existence of such a rule as a regulation of the plaintiff company was ever communicated to the defendant prior to the institution of this suit.

The deponent denies the averment of the plaintiff's statement to the effect that from a time anterior to 1893 to the date of this suit, the said regulation and demurrage charge formed a part of the contract of carriage between the plaintiff and the defendant. Deponent on the contrary avers that no contract for the payment of demurrage from the defendant to the plaintiff under any circumstances whatever has at any time been entered into by the parties. At various times during the year 1893, and subsequently, bills have been rendered to the defendant by the plaintiff for demurrage charges, but said bills did not contain notice of any regulation or rule upon which said charges were or could be based, nor were the charges made

in said bills consistent with the terms of the regulation upon which the plaintiff has declared.

Even if there be such a regulation of the plaintiff company as is set forth in the declaration, and even if the defendant is subject to its operation, the deponent is advised and believes and so avers that the said regulation is not applicable to the shipments mentioned in the plaintiff's declaration and bill of particulars as having been made to the defendant. The said regulation, as set forth in the plaintiff's declaration, applies only to a period of time beginning forty-eight hours after the arrival of a car at its destination, and ending with the unloading of said car by the consignee. In point of fact, large numbers of the cars in respect of which demurrage is claimed by the plaintiff were loaded by the defendant with return freight after having been promptly unloaded upon their arrival, and the time during which it is charged by the plaintiff that said cars were detained by the defendant, covers not merely the unloading, as above set forth, but the reloading with a return cargo. The deponent is advised, and believes, and so avers, that said regulation has application only in cases of ordinary consignments, and not in cases like the present, where the defendant not only makes consignments of return cargoes, as above set forth, but also receives from the plaintiff large numbers of empty cars for the purpose of loading them for shipment with merchandise manufactured by the defendant. During the period covered by the plaintiff's claim, no less than 14,596 loaded cars were received by the defendant from the plaintiff, and 1,451 cars were during said period brought in empty for shipments by the defendant. The deponent avers, upon information and belief, that the regulation in question can have no practical application where the plaintiff is dealing with a concern which is both consignor and consignee, and is compelled to handle such large numbers of arriving and departing cars in a space which is necessarily limited. The deponent avers that due diligence has been at all times used by the defendant in unloading, reloading, and returning the empty cars, but that the defendant's operations in this respect have been seriously interfered with by the irregularity of delivery of the cars on the part of the plaintiff. From time to time, during the period covered by the claim, large numbers of cars consigned

to the defendant were delayed in transit by the plaintiff, and then the accumulations of such delayed cars were from time to time delivered all at once upon the tracks of the plaintiff outside the defendant's property. These tracks have "dead ends," and deponent avers that as some of these cars were being taken into defendant's property with all due diligence, fresh consignments of cars arrived, and were run by the plaintiff upon the tracks in question, thus cutting off the defendant from access to the cars which had first arrived, and making it impossible to unload the cars in the order of their arrival. Deponent avers that such delays as occurred were chargeable to the plaintiff's methods of delivery, and not to default on the part of the defendant.

The deponent further avers that the items in the bill of particulars annexed to the plaintiff's declaration are in so many instances erroneous that the plaintiff's record, as a whole, cannot be relied upon. The defendant in particular charges that among the cars for which demurrage is claimed are certain cars which were not consigned to the defendant, but were consigned to various independent contractors doing work for the defendant. In many instances the time during which cars are alleged to have been detained by the defendant is incorrectly stated, and in many other instances cars alleged to have been detained were not, in fact, delivered at the defendant's property until a time subsequent to the time of delivery alleged in the declaration. The defendant will prove at the trial that the particulars respecting delivery, retention, and release of cars as set forth in the declaration are inaccurate and false. The defendant will produce at the trial its own records, carefully prepared under a system adapted to eliminate error, for the purpose of proving that the plaintiff's records are inadequate as a basis of claim.

The court discharged the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Edwin Jaquet Sellers*, with him *David W. Sellers*, for appellant, cited : Miller v. Mansfield, 112 Mass. 260; Norfolk, etc., R. R. Co. v. Adams, 90 Virginia, 393; 18 S. E. Repr. 673; Kentucky Wagon Mfg. Co. v. Ohio, etc., Ry. Co., 98 Ky. 152; 32 S. W. Repr. 595.

*George Wharton Pepper*, for appellees, cited : Burlington, etc., R. R. Co. v. Chicago, Lumber Co., 15 Neb. 390 ; 19 N. W. Repr. 451 ; Chicago, etc., Ry. Co. v. Jenkins, 103 Ill. 588.

OPINION BY MR. JUSTICE DEAN, February 24, 1902 :

The plaintiff, as a common carrier corporation, before 1893, adopted by its proper officers this rule :

" A charge of one dollar shall be imposed for car service for and upon each car carried over any portion of its line of railroad not unloaded by the consignee within forty-eight hours from the time said car arrived at the destination thereof, ready for delivery to such consignee, for each day or part of day after said forty-eight hours, not including Sundays and legal holidays, during which said car should remain unloaded, the said charge being payable by the consignee or person receiving the car."

From July, 1893, up to December, 1898, the defendant, which is a large iron and steel manufacturer at Nicetown in Philadelphia county, received from plaintiff consigned to the Steel company, about 14,000 cars laden with iron, coal and other products used in its manufacturing business. A large number of these cars were detained beyond the forty-eight hours, some for many days, before being unloaded. Plaintiff charged for the delay as provided by the rule quoted, and presented monthly bills for the same to defendant, which it refused to pay. In an affidavit of defense it denied the right to make the charge and consequently, its liability to pay. Plaintiff, then took a rule to show cause why judgment should not be entered for want of sufficient affidavit of defense. The aggregate of the charges within the years named, was $4,048. The learned President Judge ARNOLD of the court below, in his opinion, discharging the rule, says :

" Conceding that a carrier may charge a consignee a fixed rate in the nature of demurrage for the detention of its cars beyond a reasonable time for discharging their cargoes, and that the rate claimed in the present suit is a reasonable rate, yet there is sufficient denial of the facts upon which the plaintiff bases its claim to prevent the entry of a summary judgment, and therefore, we discharge the rule for judgment for want of a sufficient affidavit of defense."

From this decree plaintiff brings this appeal, arguing, that the court erred in refusing to make the rule absolute.

The plaintiff has an unquestioned right as a common carrier to make reasonable rules to speed the unloading of its cars; cars are for the transportation of freight, not for its storage. A rule on its face may apparently be unreasonable, either as to time allowed for unloading, or as to the extent of the penalty by which it is sought to enforce a reasonable time limit; or the reasonableness of the rule may be doubtful, in either of which cases, the evidence would be for a jury. But no such question arises here, for the affidavit does not deny the reasonableness of this rule as applicable to others; it only denies, on other grounds, the right of plaintiff to apply it to these shipments. Where the rule is manifestly a reasonable one, as this one is, both as to time and charge, the court will not take up time by instructing a jury to find the fact, any more than it would instruct a jury, on undisputed facts, to find that a collecting bank had protested a negotiable note within a reasonable time after nonpayment. Although, the question has not been heretofore directly passed upon by this court, it has been decided in several of the states : Miller v. Mansfield, 112 Mass. 260; Norfolk, etc., Railroad Co. v. Adams, 90 Va. 393; 18 S. E. Repr. 673; Kentucky Wagon Mfg. Co. v. Ohio, etc., Railway Co., 98 Ky. 152; 32 S. W. Repr. 595, and other cases.

As before noticed, with the plaintiff's statement is filed a complete copy of its account, giving car initials, number, contents, exact hour of arrival, date of release, number of days detained, and amount of charge. None of the cars charged for were kept less than three days, and many of them from seven to twenty-one days. So far as it was in the power of a railroad company to give notice to a consignee of every material fact, the defendant got this notice from plaintiff when the bills were rendered. Wherein does the affidavit make an issue of fact which ought to go to a jury? It sets out that the demurrage rule is not applicable to it, because large numbers of the cars consigned to it were unloaded promptly, but being reloaded as outgoing shipments, the detention caused by reloading is embraced in a charge of delay in unloading. The plaintiff having sworn to its detailed statement, having positively

averred the number, date of arrival and date of release, as to every car, it was the duty of the defendant to meet this charge, by specifying the cars detained for other reasons, than by neglect to unload. The least error in plaintiff's account, whether overcharge as to delay, mistake in car, or consignment to defendant, when consigned to some other, could easily have been detected and exposed in the affidavit of defense; every delay occasioned, not by unloading but by reloading, could have been particularly averred. We do not say, that if defendant had been unable to do this, either by neglect to keep accounts or by their loss or destruction, that the court below might not, under the circumstances, have refrained from entering judgment. But the defendant makes no averment of inability to produce accounts which will specify the alleged errors in plaintiff's account; on the contrary it avers, that, "the defendant will produce at the trial, its own records, carefully prepared under a system adapted to prevent error, for the purpose of proving that the plaintiff's records are inadequate as a basis of claim." It thus asserts, that it has in its possession accurate accounts which at the trial in the court before a jury will defeat plaintiff's claim in part at least; yet, with seeming caution it refrains from specifying the particulars then before it. This defeats the very purpose of the affidavit of defense law. Its object was to hasten final judgment by setting out in the affidavit the groundlessness of the whole or part of plaintiff's claim, or by averring that it had been paid, and how, in whole or in part. The parties might then, in that early stage of the proceedings be brought together; the plaintiff might abandon his claim in whole or in part. This affidavit specifies nothing in answer to plaintiff's full and complete specifications.

Every averment is an inference from a "carefully prepared" system of bookkeeping of its own, without a copy of the particulars which would demonstrate the errors of plaintiff's charges. "The affidavit should state specifically and at length the nature and character of the defense relied on:" Bryar v. Harrison, 37 Pa. 233. "The spirit of the affidavit of defense law abhors evasion and equivocation and punishes them by entering judgment:" Endlich on Affidavits of Defense, sec. 377; Woods v. Watkins, 40 Pa. 458.

The further objection to plaintiff's claim is, that it does not

aver expressly or impliedly that these parties ever became parties to any contract for payment of demurrage on detained cars. But, they were parties to the contract of shipment over plaintiff's railroad and this is averred; and then, further, it is averred, that since the demurrage rule was adopted, it has formed part of the contract of shipment. This is sufficient averment of the implied contract. As a consignee of goods over plaintiff's railroad, it impliedly contracted to submit to all reasonable rules for the regulation of shipments. That the shipper was not consulted in framing the rules, does not affect their validity: Wagon Co. v. Ohio Railway Co., supra. There is no duty on a common carrier to consult, either its shippers or consignees, as to the wisdom of its rates of freight for carrying, or rules for demurrage; as to the one, it cannot exceed a lawful rate, as to the other, it cannot exceed a reasonable charge. Within these bounds, it is presumed, in the interests of its stockholders and the public, to properly conduct its own business. The defendant further avers, in its affidavit that "prior to 1893, or at any time subsequent thereto," it had no knowledge that plaintiff had established a rule relating to the demurrage charges set forth in its statement, and, that no notice of such rule was ever communicated prior to the bringing of this suit; but then it says: "At various times during the year 1893 and subsequently, bills have been rendered to the defendant by plaintiff for demurrage charges, but said bills did not contain notice of any regulation or rule, on which said charges were or could be based, nor were the charges in said bills consistent with the terms of the regulations upon which the plaintiff has declared." This is inconsistent and evasive both in language and substance. That plaintiff did adopt such rule, is clearly shown by its uniform charges; it was not bound to serve a verbatim copy of the rule on defendant; that could have shown nothing so specifically as the charge, which plainly says, what detention is allowed, what excess is charged, on what car and on what goods. And that defendant had full knowledge, is shown by its own admission, that bills for violation of the rule were regularly rendered. We think this affidavit falls short of what the law calls sufficient. It raises no issue of fact calling for the intervention of a jury and the law is clearly with the plaintiff.

Therefore the decree discharging the rule is reversed and

the record is remitted to the court below with directions to enter judgment for plaintiff, unless other legal or equitable cause be shown to the court below, why such judgment should not be entered.