# Ryon, Appellant, *v.* Starr (No. 1).

*Affidavit of defense—Practice, C. P.—Contracts.*

Where plaintiff's claim depends upon written contracts and papers set out in the statement and the affidavit of defense raises no issue of fact by denying any part of the statement except the inference from the face of the papers, it is a question of law for the court to decide upon the statement and affidavit.

Where the statement of claim contains a copy of the contracts on which the action is based, and all other papers and accounts between the parties relating to the matter in dispute, and the affidavit of defense does not deny a single material averment in the statement, the case is for the court and not for the jury.

Argued Feb. 12, 1906. Appeal, No. 297, Jan. T., 1905, by plaintiff, from order of C. P. Schuylkill Co., March T., 1904, No. 22, refusing to enter judgment for full amount of plaintiff's claim in suit of George W. Ryon v. David Starr. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Reversed.

Assumpsit on a contract. Before BECHTEL, P. J.

The court below filed the following opinion:

From the plaintiff's statement it appears, that the defendant by writing dated January 21, 1902, authorized and empowered him to sell or lease, a certain tract of land, and agreed to pay to him the sum of $20,000 in case of a sale, for the price therein named. This writing also gives the plaintiff power to lease, subject to the approval of the defendant, and upon the terms therein named. The plaintiff did, subsequently, effect a lease with the Black Diamond Anthracite Coal Company, for a period of 999 years, upon terms which were satisfactory to the defendant, and of which he approved, as appears from the instrument which he signed. This though termed a lease, would perhaps be more properly termed a sale. It recites the payment of $1.00, and the further consideration of 900,000 shares of stock, of the par value of $1.00 per share, with the same "privileges and rights as of deed." The 900,000 shares of stock were in due course of time delivered, under this written instrument which is dated June 17, 1902. Upon the same day (June 17, 1902) David Starr, the defendant, executed an instrument, in which he sets forth that he is the owner of the 900,000 shares of stock of the Black Diamond Anthracite Coal Company, and agrees to deposit said stock in such trust company as Peter Whitney, the other party to the agreement, may select, to be held in escrow, and to be delivered to said Whitney, when he paid therefor at the rate of ten cents per share, or to such parties as said Whitney might select. The said shares of stock were deposited, in pursuance of this agreement in the Trust Company of the Republic, and subsequently in the Commonwealth Trust Company on November 2, 1903. On July 15, 1902, David Starr, the defendant, entered into an agreement with the plaintiff, in which he promises and agrees to pay to the plaintiff, one-fourth of all the money received by the said trust company and placed to the credit of Starr, until the amount thereof equaled the sum of $20,000. The agreement made between Starr and Whitney, dated June 17, 1904, and the agreement dated July 25, 1904, do not change or in any way affect the plaintiff's rights. In pursuance of the sales of stock thus deposited in the trust company the defendant received $37,640, and of this sum he paid to the plaintiff the sum of $9,140, or one-fourth, being

the exact proportion or sum he contracted and agreed to pay, under the agreement of July 15, 1902. The copy of account filed shows, that Starr began to receive money, arising from the sale of stock, as early as July 15, 1902, and continued to receive money almost every month, down to and including September 19, 1904. Out of these moneys he paid the exact portion required by his contract of July 15, 1902, thereby recognizing his contract obligation and its binding force, down to and including September 19, 1904, the time of the last payment. Up to this point no difficulty arose, as far as this record shows, between the plaintiff and the defendant. In December, 1904, according to the affidavit of defense, about the 6th or 7th, Starr, without the knowledge or consent of the plaintiff, sold to Peter Whitney all his right, title and interest in the stock remaining unsold, and gave him full power to transfer the same to any party or parties. In addition he says, "I do relinquish now and forever, on behalf of myself and my heirs at law, all claim whatsoever to said shares of the stock, of the said Black Diamond Anthracite Coal Company." He also agrees to deliver a quitclaim deed to said Whitney, or anyone he may elect, of all claim to the property. In this agreement the shares of stock are mentioned as being "Five Hundred Thousand more or less." As a consideration for this action, on the part of the defendant, he received $12,500, and of this sum he has paid nothing to the plaintiff. The plaintiff now claims $3,125, as one-fourth of the $12,500, received by Starr; and $7,465, which with the sum paid, to wit: $9,140, would make the $20,000 provided for in the agreement of July 15, 1902. And the defendant denies his liability, for any further sum than the amount already paid. Just here and in this way, arises the real question, the pinch in the case. The plaintiff's statement is sufficient to call upon the defendant for an affidavit of defense. We turn now to the affidavit to learn what is therein given as a defense to the plaintiff's cause of action. The defendant admits the execution of all the instruments referred to, and the receipt of the amounts, set out in the copy of the account. The defendant alleges that the agreement of lease, and the agreement with Whitney, both of June 17, 1902, were illegal and says "this affiant avers cannot be made the basis for recovery in this action." The statement is based

upon the assertion, that these instruments created a fictitious valuation of the leasehold premises. Just how these agreements created a fictitious valuation of the leasehold premises does not seem clear. In effect the stock was to be sold to secure Starr's purchase money and could not be sold save through him; he gave an option to Whitney and thereafter extended it, and subsequently sold the stock to him. We cannot see how this created "a fictitious valuation of the leasehold premises." The leasehold premises were worth just as much after the sale to Whitney as before and were not worth anything more. The sale furnished no quotation of price, or value for the stock; it was a private transaction in which Starr sold the stock which he owned, at a price satisfactory to himself, and this he had a right to do, as far as Whitney or the coal company are concerned, in fact as to them, he had a right to give it away if he wished. His relation to the plaintiff is, however, different, but of this we do not wish to speak now, save to say, that Starr contracted to account to him (the plaintiff) for the money arising from said stock sale, and he (Ryon) is no party to the Whitney agreements. The defendant denies that he owes anything to the plaintiff, upon the ground that the amount paid him is an adequate compensation for the services rendered. But the amount paid him is not the amount Starr contracted to pay, nor is it the proportion he contracted to pay, of the money he has already received. After the plaintiff rendered the services he was employed to render, and Starr received the benefit thereof, he now proposes to alter the contract, under which they were rendered, and say to the plaintiff, your services are worth less than half what I contracted to pay you, and I will simply repudiate my contract. This may be a convenient, but does not seem to be a legal, way of disposing of his contract liability. We next have the suggestion, that the agreement or sixty-day option given to F. P. Christian, and the agreement with the plaintiff, providing for the disposition of the money, arising from the said option, to some extent modified the plaintiff's agreement of January 21, 1902, how or to what extent is not even suggested. But it is difficult to understand how it affected the said agreement of January 21, 1902. It was but an option given to Christian, which was never taken up, never completed, nothing paid in

pursuance thereof, and which expired in sixty days. If, however, the agreement made to protect Ryon under Christian's option, were to be substituted, for the one under which he now claims, Starr's liability would be just twice as great, hence he, Starr, can profit nothing by setting it up as a defense. The next statement of defense is, that the " plaintiff has received one-fourth of all the money received by the Trust Company of the Republic of the City of New York which was put to the credit of this affiant." This simply means that unless the money was placed to the credit of Starr in the trust company the plaintiff could receive none of it. This is apparent not only from this paragraph but a subsequent one, in which he admits he received the $12,500 and has paid none of it over to the plaintiff. Starr is the only party who possessed the power to transfer the shares of stock, they belonged to him, he could if he wished, require the purchase money to be paid, in every instance, to the trust company, and then receive it from that source, and he was the only person who could dispose of it, and take the money without passing it through the trust company. It is immaterial in which of these ways he received the money, so that he did receive it, as the proceeds of the shares, for he has contracted to pay over one-fourth thereof to the plaintiff. As to the claim of damages offered as set-off, it is alleged to arise out of a failure to claim the 100,000 shares, which Peter Whitney was to have without charge, after he paid for all the other unsold shares at ten cents per share. We see no reason why either the plaintiff or defendant should make any formal claim or demand, for the 100,000 shares. Whitney never acquired any title to said shares, either under his agreement of June 17, 1902, or June 17, 1904, for he never complied with either, and they expired by the limitation of time mentioned in the instruments. But if Whitney ever had acquired any claim, and consequently disputed defendant's right to the stock, the defendant has put it out of his own power, as well as the power of his attorney, to make any claim to said 100,000 shares, because he sold the same to Whitney, and forever released both Whitney and the coal company. Having done this, without the knowledge or consent of the plaintiff, and having by this act disarmed both himself and his attorney, how can he now claim set-off in damages, because his

attorney did not claim the 100,000 shares? Over and above this, however, is the fact that there was nothing to claim, as Whitney had acquired no title, and as far as now appears nobody ever disputed his title to these or any of the 900,000 shares. This entire difficulty arises out of the defendant's act in entering into the contract of sale, and actually selling the stock on December 7, 1904. He seeks to excuse himself by saying that " Frank P. Christian induced this affiant to leave his home on December 6, 1904, and took him to the coal company's office in New York, and then and there Christian and Whitney made statements as to the title, and threats of suits, and charges of fraud, and he fearing trouble executed the writing of December 7, 1904." If this be true it might afford him some ground for proceeding against Christian, Whitney, and possibly the coal company, to relieve him from the written instrument thus secured. But can it relieve him from liability to Ryon, this plaintiff? He had no part in this transaction. Why should he suffer in consequence thereof? That the defendant was conscious of the position he was placing himself in, with reference to the plaintiff, is evident from his affidavit in which he says he " especially stipulated that whatever interest the plaintiff might have in the transaction was to be provided for, by the said Whitney and the said Christian," and that they " represented that they would satisfy, and take care of any interest, the said plaintiff might have, growing out of the subject-matter." If the plaintiff had already been paid all he was entitled to, and if his claim was covered by set-off, or if he had no claim, why was he (the defendant) seeking to make Whitney and Christian responsible for its payment? It is a significant fact, that the writing given to Whitney is silent upon this subject, but carefully releases said Whitney and the coal company in this language " and to surrender all claim of any nature whatsoever against either Peter Whitney or the Black Diamond Anthracite Coal Company or their heirs or assigns now and forever." If the defendant's statement is correct, then the transaction of December 7, 1904, is, to say the least of it, not creditable to the parties concerned, and wears the appearance of an intention to circumvent the plaintiff and his claim. We have thus considered the affidavit, and now briefly refer to the requirements of a sufficient

affidavit. The general rule may be stated in this language: "An affidavit of defense should aver distinctly every fact necessary to constitute a defense, nothing should be left to inference:" Peck v. Jones, 70 Pa. 83, and Gas Co. v. Construction Co., 30 W. N. C. 222. Nothing should be left to conjecture; that which is not stated is taken not to exist: Class v. Kingsley, 142 Pa. 636; National Bank v. Stadelman, 153 Pa. 634; Kaufman v. Iron Co., 105 Pa. 537; Noble v. Kreuzkamp, 111 Pa. 68, and Sanders v. Sharp, 153 Pa. 555. We regard the affidavit as insufficient, at least so far as the money actually received is concerned, especially in view of the above cases and the decisions in Savings Bank v. Miller, 179 Pa. 412; Erie City v. Butler, 21 W. N. C. 459; Vollmer v. Magowan, 180 Pa. 110; Moore v. Ins. Co., 196 Pa. 30, and Penna. R. R. Co. v. Steel Co., 201 Pa. 624, and numerous other authorities. We are therefore of the opinion that the affidavit of defense is not good, not sufficient as to the money received and that the plaintiff is entitled to judgment for one-fourth of the $12,- 500 or $3,125. The remaining part of plaintiff's claim rests upon different ground, and under the statement and affidavit of defense, will likely involve questions of fact, that must be passed upon by a jury. In pursuance of the views herein expressed, we now make the following order under the act of 1897, upon the motion of the plaintiff:

And now, April 24, 1905, the affidavit is adjudged insufficient as to the money received and sustained as to the balance of the claim. We therefore direct judgment to be entered for $3,125 in favor to the plaintiff and against the defendant, and grant permission to proceed as to the balance of the claim, under the provisions of the Act of July 15, 1897, P. L. 276.

*Error assigned* was the order of the court.

*H. B. Bartholomew* and *James B. Reilly*, for appellant, cited: Bardsley v. Delp, 88 Pa. 420; Sanders v. Sharp, 153 Pa. 555; Moore v. Phillips, 154 Pa. 204; Savings Bank v. Miller, 179 Pa. 412; People's Street Ry. Co. v. Spencer, 156 Pa. 85; Penna. R. R. Co. v. Midvale Steel Co., 201 Pa. 624; Seiple v. Life Ins. & Trust Co., 84 Pa. 47; Chain v. Hart, 140 Pa. 374.

*George M. Roads*, for appellee, cited: Rhoads v. Com., 15

Pa. 272 ; Holt v. Green, 73 Pa. 198 ; Morris Run Coal Co. v. Barclay Coal Co., 68 Pa. 173 ; Zuver v. Clark, 104 Pa. 222 ; Land & Improvement Co. v. Mendinhall, 4 Pa. Superior Ct. 398 ; Griffith v. Sitgreaves, 81* Pa. 378 ; Murphy v. Cappeau, 147 Pa. 45 ; Ensign v. Kindred, 163 Pa. 638 ; Ætna Ins. Co. v. Confer, 158 Pa. 598.

OPINION BY MR. JUSTICE ELKIN, March 5, 1906 :

This court has held in Ashman v. Weigley, 148 Pa. 61, that the procedure act of 1887 made a material change in the affidavit of defense law. By the terms of that statute the statement of claim takes the place of a common-law declaration, and in an action of assumpsit requires an affidavit to be filed to prevent judgment. The material averments of the statement of claim are to be taken as admitted wherein they are not specifically denied by the affidavit. In Odd Fellows Savings Bank v. Miller, 179 Pa. 412, it was held that an affidavit of defense was insufficient which was largely made up of irrelevant and immaterial matters contained in loose and evasive averments of fact. Where plaintiff's claim depends upon written contracts and papers set out in the statement and the affidavit of defense raises no issue of fact by denying any part of the statement except the inferences from the face of the papers, it is a question of law for the court to decide upon the statement and affidavit : People's Street Railway Company v. Spencer, 156 Pa. 85. In Penna. Railroad Company v. Midvale Steel Company, 201 Pa. 624, it was held that inasmuch as the statement of claim contained an exact copy of the accounts and all other data relied on to support it, while the affidavit of defense did not deny the correctness of the accounts and papers so set out, but on its face set up certain reasons for the delay, there was no issue of fact calling for the intervention of a jury, and the sufficiency of the affidavit was for the court as a question of law.

In the case at bar the statement of claim contains a copy of the original and supplemental contracts, and all other papers and accounts between the parties relating to the matter in dispute, while the affidavit of defense does not deny a single material averment therein. No issue of fact was raised by the affidavit calling for the intervention of a jury, and it was the duty of the court to decide the question on the statement and

affidavit.   The learned court below in an able and well-considered opinion, properly defined the rights and relations of the parties, but inadvertently committed the error of saying : " The remaining part of plaintiff's claim rests upon different grounds, and under the statement and affidavit of defense will likely involve questions of fact that must be passed upon by a jury."   The questions of fact must be raised by the affidavit itself, and nothing must be left to conjecture or inference : Bardsley v. Delp, 88 Pa. 420.

The claim of set-off for damages is without merit and will not avail the appellee as a defense to this action.   This branch of the case comes within the rule stated in Chain v. Hart, 140 Pa. 374.   The affidavit of defense was clearly insufficient and the rule for judgment should have been made absolute.

The decree or order awarding a procedendo as to the balance of the claim for which the affidavit of defense was deemed suf-. ficient is reversed, the rule for judgment for want of a sufficient affidavit of defense is made absolute, and it is directed that judgment be entered for plaintiff in the court below for the balance shown to be due by the statement of claim, in accordance with this opinion.