# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## Norfolk & Western R. R. Co. v. Adams, &c.

### January 11th, 1894.

1. Carriers—*Detention of cars—" Demurrage."*—A railroad company may
   make a reasonable charge for delay in unloading cars after notice of
   arrival to the consignee, and such charge is not for transportation,
   storage or delivery of freight within Code, §§ 1202, 1203, which declare
   that no charge other than that provided by law shall be made.
2. Idem.—A charge to a consignee of one dollar a day after three days for
   every car remaining unloaded after notice of arrival, *held*, not unreason-
   able.

Error to judgment of circuit court of Roanoke county, ren-
dered at its April term, 1893, in an action of *assumpsit* wherein
the defendants in error, Adams, Clement & Co., were plaintiffs,
and the plaintiff in error, the Norfolk and Western Railroad
Company, was defendant. The object of the suit was to re-
cover $488 with interest thereon from September 1, 1891, until
paid, alleged to have been illegally exacted from and paid by
the plaintiffs to said company as charges for the detention of
freight cars consigned to them, beyond seventy-two hours after ·
notice of arrival. It was a rule of the company with which
the plaintiffs were acquainted, to charge one dollar a day
for detention of cars beyond three days, and the shipments
were made with the agreement that the rule should be en-
forced. The plaintiffs contended that the rule violated Code,
sections 1202 and 1203, which regulate the charges of carriers
of passengers and freight. The verdict and the judgment be-
ing for the amount claimed by the plaintiffs, the defendant

company brought the case here upon a writ of error.    Opinion states the case.

*Kirkpatrick & Blackford* and *Watts, Robertson & Robertson*, for plaintiff in error.

*Pugh & Moffett*, for defendants in error.

FAUNTLEROY, J., delivered the opinion of the court.

The Norfolk and Western railroad is a common carrier owning and operating a line of railroad in the State of Virginia, and the town of Salem is upon the said line.    The plaintiffs are lumber dealers, doing business at the said town of Salem; and between February 16th and August 31, 1891, they received a large number of shipments of lumber in car-load lots consigned to them from points on the line of the said Norfolk and Western railroad and from points in the State of Virginia and other points in other States.    These shipments were made with the understanding and agreement that the lumber was to be unloaded by the consignee at Salem depot upon the arrival of the shipments at that point.    The railroads of Virginia and of other States, for their own protection, as well as for the protection and benefit of the public, have a car service set of rules, designed and enforced to secure the prompt movement of freight cars; and under the rules of this car service association the Norfolk and Western Railroad Company have a charge of ($1) one dollar per car per day for the use of their cars and their side or switch tracks, for every day that the cars remain unloaded after notice of their arrival to the consignee, and the lapse of three days.    Under the abuses that prevailed previous to the establishment of this rule serious loss and inconvenience were caused both to the shipping public and the railroad company by the unreasonable and protracted delay of consignees in unloading the cars, the railroad company being unable

thereby to furnish cars when called upon by shippers of freight, and their side tracks being encumbered, and the movement of freight impeded, causing heavy expense and a demand for more track room to accommodate idle cars, standing unloaded upon their tracks, and the company unable, therefore, when called upon to furnish cars for the shipping public. The railroad company, as a common carrier, is bound to furnish cars for transportation of freight, and they must have control over their cars in order to perform their duties to the public. A car in motion is a useful thing, but a car standing idle and unloaded on the track is useless and an incumbrance. If A. be allowed to hold a car unloaded at his pleasure or convenience, without cost or charge, and thus deprive the railroad company of the use of its vehicles for transportation of the freight of B., it is evident that both the railroad company and the shipping public will suffer injury. The plaintiffs in this suit had notice of the existence and operation of these rules, and they had paid the charges for the detention of cars long before the commencement of the account sued upon, and they knew and agreed, when the shipments were made, that such a charge would be made unless they unloaded their cars in compliance with the rule of the company, which gave to them seventy-two hours in which to unload their freight, after notice of the arrival of the cars which they had stipulated to unload.

It is well settled, in this State and in other States, that a common carrier may make ·reasonable rules and regulations for the convenient transaction of business between itself and those dealing with it—either as passengers or as shippers. See *Norfolk & Western Railroad Company* v. *Wysor*, 82 Va. (Hansbrough), 250; *Norfolk & Western Railroad Company* v. *Irvine*, 84 Va. (Hansbrough), 553. That this rule is reasonable and proper and that the railroad company can make such a charge has been decided in a number of States—the question never having arisen before in this State. See *Miller & others* v.

*Georgia Railroad & Banking Company*, reported in American & English Railroad Cases, vol. 50, p. 70; *Miller* v. *Mansfield*, 112 Mass., 260; *Union Pacific, Denver & Gulf Railroad Company* v. *Cook*, American & English R. R. Cases, vol. 50, p. 89; *Kentucky Wagon Manufacturing Company* v. *Louisville & Nashville Railroad Company*, Amer. & English Railroad Cases, vol. 50, p. 90; *C. M. & St. Paul Railway Company* v. *Pioneer Fuel Company;* Beach Railway Law, sec. 924, and cases there cited; Jones on Liens, sec. 284, and cases cited; Lawson's Rights & Remedies, vol. 4, p. 3146, secs. 1831 and 1832; Wood's Railway Laws, pp. 1592-3 and 1600; Waterman on the Law of Corporations, vol. 2, pp. 245-6; Amer. & English Ency. of Law, vol. 2, pp. 878 to 881, and notes; Redfield on the Law of Railways, 6th edition, pp. 67 to 83.

In addition to this long line of authorities holding the right of a railroad company to make such charge, and the reasonableness of such charge, there have been numerous investigations and rulings upon the point by the railroad commissioners of the various States. In Texas the railroad commissioner, Judge Reagan, after full investigation, made an order fixing $3 per day per car as a reasonable charge for delay in unloading after forty-eight hours notice. The railroad commissioner of Illinois, and those of other States, after full investigations, have decided in favor of the right and reasonableness of such a charge; and when it is considered that these railroad commissioners are appointed for the express purpose of regulating railroads in the interest of the public, the weight of their decisions as to the reasonableness of such a charge is apparent. It is contended, however, that the sections of the Code of Virginia, 1887, 1202 and 1203, make such a charge illegal; and the judge of the trial court took the view of the plaintiff, and instructed the jury that, under the law of Virginia, such charge is unlawful, whether it be reasonable or not.

We think that the trial court erred in so holding and in so instructing the jury. The charge made by the railroad company for the detention of its cars and the occupation of its tracks after due notice, and the allowance of three days to the consignees to unload the cars and disincumber the track is not within the purview purpose or prescription of the statute, and is not of the character of weighing, storage and delivery of articles of freight contemplated by the makers of the statute. The charge is not for transportation, storage or delivery of freight, and it is not a device or a pretext for exacting of the shipper or the consignee more than the rate prescribed by law and fixed by schedule; but it is for the use and occupation of the cars and the obstruction of their tracks by the consignee for weeks and months after the contract for transporting and delivering the freight had been fulfilled and ended. It is neither a transportation charge, nor a storage charge, nor a terminal charge, nor a subterfuge for adding to the cost of tansportation in excess of the rates prescribed. After arrival at the place of consignment, and notice to the consignee of the arrival, and the allowance of a reasonable time for the unloading of the cars by the consignee, according to his contract obligation to unload, the duties and the liabilities of the carrier cease, and the carrier becomes simply a bailee for him, and can make rules and regulations and charges for such service as bailee as it may see fit. Such charges are not carrier charges in the meaning, intendment, or prescription of the statute. Under the head of *Carriers*, the American and English Encyclopædia of Law, page 880, vol. 2: " A carrier, fulfilling the duties of a warehouse man, is not obliged to accept the goods subject to his ordinary liability. He may impose such terms as he pleases, and the consignor (consignee), with notice thereof, will be bound. Whether such terms are or are not reasonable is an irrelevant inquiry." In a note to this section is the following: "We can see no reason why a railroad company, as

a common carrier, cannot stipulate, by a contract express or implied, that their liability as carrier shall terminate with delivery at a particular point, and they will assume no liability at all in such case as warehousemen.  If the consignee is fully advised at the time of the shipment that the company has no agent at a particular station, or the place to which the consignment is made, and the failure to employ such agent is not shown to be unreasonable in view of the condition of the company's business, there is, in the absence of rebutting circumstances, an implied consent that the carrier's responsibility shall be dissolved, when he has done all that the nature of the case permits him to do, according to the reasonable and proper usages of his business."

Hutchinson on Carriers, section 378, says: " The custody and protection of the goods in his new character as warehouseman is a distinct service from that of their transportation, which entitles him to additional compensation, in consideration for which he continues liable for their safe keeping as the hired bailee of the owner."

The record in this case shows that, at the time of the shipments of this lumber, the plaintiffs knew that there was a depot at Salem for the ordinary business of the company, but not for the accommodation of car loads of lumber, and that, if they did not unload the cars, according to the contemplation of the contract, within seventy-two hours (exclusive of Sundays and holidays) after one day for placing the cars and notice, they would have to pay one dollar per car per day thereafter—not for transportation and delivery—but for the detention of cars and use and occupation of the tracks of the railroad company.  The statute provides solely for the transportation, storage, and delivery of freight to the carrier, to be shipped by it and delivered at the other end of the journey to the consignee, but it makes no provision or regulation for the hiring of cars to be loaded and unloaded by the customer, according

to such contract as the carrier and the customer may make, express or implied. "A railroad company is not required by law to keep a warehouse or depot at every station along its route or line; and it may stipulate, either expressly or by implication, that it will assume no liability as warehouseman at a flag station where it has no depot or agent, and when the consignee is fully advised, at the time of the shipment, that the company has no depot or agent at such station, and it is not shown that the exigencies of its business required that it should have an agent at the place, the liability as common carrier terminates with the safe delivery of the goods on the side track at that point, and it assumes no liability as a warehouseman." It is shown in evidence that this rule and charge of one dollar a day for the unreasonable and even long continued detention of the car, and obstruction of the tracks and business of the railroad, is not made for compensation to the company, but for the benefit of the public and a stimulus to the consignee to unload the car and disencumber the track and the business of the road. The evidence in the record is that the car is much more valuable to the company than the charge of one dollar per day, and it is manifest that, if cars can be delayed and held by shippers or consignees for months (as the record shows was done in this case in some instances) without any regulation that would be operative, the business of the railroad and the public service must necessarily suffer. In view of the authorities and the facts of this case we are of opinion the money paid by the plaintiffs to the defendant company was properly charged by the said company, and was due to it by the plaintiffs, Adams, Clements & Co., and they had no right to recover it back, and that the circuit court of Roanoke county erred in the law as applicable to the facts of the case, and erred in refusing to set aside the verdict of the jury; that the judgment complained of is erroneous, and the same is reversed and annulled. And this court, proceeding to

enter such judgment as the circuit court ought to have entered upon the pleadings, will dismiss the plaintiff's suit.

LACY and HINTON, JJ., dissented.

JUDGMENT REVERSED.

NOTE BY REPORTER.—For a discussion of the law of "demurrage" see note to the report of this case.   22 L. R. A., p. 530.