## MICHIE v. NEW YORK, N. H. & H. R. CO.

(Circuit Court, D. Massachusetts. February 26, 1907.)

### No. 162.

1. CONSTITUTIONAL LAW—STATUTES—DETERMINATION OF CONSTITUTIONALITY— DUTY OF TRIAL COURT.

A court of first instance may properly decline to hold an act of Congress unconstitutional, unless in a clear case, and leave the question to an appellate court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 42.]

2. CARRIERS—INTERSTATE COMMERCE ACT—SCOPE.

The provisions of Interstate Commerce Act Feb. 4, 1887, c. 104, §§ 1, 3, 24 Stat. 379, 380 [U. S. Comp. St. 1901, pp. 3154, 3155], requiring rates for the transportation and for the "receiving, delivering, storage or handling" of property by an interstate carrier to be reasonable, and prohibiting discrimination, are sufficiently broad to cover demurrage charges.

3. SAME—DEMURRAGE—REASONABLENESS OF CHARGE.

A demurrage charge of $1 per day for the time a car loaded with hay remains standing on the tracks of a railroad company before being unloaded, after the first 96 hours, deducting holidays, Sundays, and rainy days, held not unreasonable.

4. SAME—DISCRIMINATION.

A demurrage or "car service" charge, made by an interstate railroad company for the time during which cars loaded with hay are left standing on its tracks at a suburban station in Boston after the expiration of the time given for unloading, is not discriminative within the meaning of Interstate Commerce Act Feb. 4, 1887, c. 104, § 3, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3155], because at South Boston, which is the terminal of the road in the city, a hay shed is provided into which hay is unloaded at the request of a consignee to the extent of its capacity, and where it is stored at a somewhat less rate, the charge being the same at the two places where hay is left in the car.

At Law.

Hill, Bangs, Barlow & Homans, for plaintiff.
Choate, Hall & Stewart, for defendant.

LOWELL, Circuit Judge. This is a suit brought under sections 1 and 3 of the Interstate Commerce Act of February 4, 1887, c. 104, 24 Stat. 379, 380 [U. S. Comp. St. 1901, pp. 3154, 3155], to recover damages alleged to have been sustained by its violation.

The plaintiff is a dealer in hay at Forest Hills, a suburban station

within the city limits of Boston. At Forest Hills the defendant allows hay to remain in the freight cars without charge for 96 hours after its receipt, Sundays, holidays, and rainy days excluded; there is a charge of $1 a car for each succeeding day or part thereof. This charge is that made generally throughout New England, and is less than the charge made in some other parts of the United States. The defendant objects that the statute does not apply to a charge of this sort, and that, if it does apply, it is unconstitutional. The phrase of the statute, "delivering, storage or handling," is broad enough to include demurrage. While every court, however limited its jurisdiction, must regard the Constitution as the supreme law of the land, and so must disregard every statute which contravenes it, yet I conceive that a court of first instance may properly hesitate before enforcing its own interpretation of the Constitution as against that given by Congress. Save in a clear case of congressional error, the avoidance of the statute may well be left to an appellate court. I decline to hold the statute unconstitutional in its application to the case at bar.

In the first count of his declaration, the plaintiff alleges that the charge for the storage or handling hay at Forest Hills is unreasonable: First, because the defendant pays to other railroads for the use of their cars but 25 cents a day. As between railroads, the charge is made exclusively for the use of the car, while the defendant's charge to the plaintiff is made also for the use of the tracks. Moreover, one railroad can retain the car of another at the 20-cent rate for only 30 days, and after that time must pay a dollar a day for its use. Within this period of 30 days is included all time occupied in transportation, without any deduction. How much, if anything, the defendant actually paid to other roads for the use of their cars while it charged the plaintiff for car service, does not appear. Second, because at South Boston and Charlestown the charge is less than at Forest Hills. This difference, which will be dealt with later, even if it be objectionable as a discrimination in favor of South Boston and Charlestown, yet, under the peculiar circumstances of the case, affords no substantial evidence that the charge made at Forest Hills is intrinsically unreasonable. Third, because a less rate is charged on grain intended for exportation. The tendency of this evidence is not sufficient to establish the unreasonableness of the charge here in question. The rate charged by the defendant has been held reasonable in several cases: Miller v. Mansfield, 112 Mass. 260; Miller v. Georgia R. R. Co., 88 Ga. 563, 15 S. E. 316, 18 L. R. A. 323, 30 Am. St. Rep. 170; Kentucky Wagon Mfg. Co. v. Ohio & M. Ry. Co., 98 Ky. 152, 32 S. W. 595, 36 L. R. A. 850, 56 Am. St. Rep. 326; Schumacher v. C. & N. West. Ry. Co., 207 Ill. 199, 69 N. E. 825; Norfolk & Western R. R. Co. v. Adams, 90 Va. 393, 18 S. E. 673, 22 L. R. A. 530, 44 Am. St. Rep. 916; Penn. R. R. Co. v. Midvale Steel Co., 201 Pa. 624, 51 Atl. 313, 88 Am. St. Rep. 836. The plaintiff has not made out his case on the first count.

The second count is based upon the third section of the act, and alleges, in substance, a discrimination in favor of South Boston, the principal terminal station of the defendant's road in Boston. At that place, at Forest Hills, and at all the defendant's stations, the "car service" rate, so-called, is uniform, and is that above stated. It is

the only rate which is collected for the delivery and storage of hay at any of the defendant's stations except South Boston. There an alternative charge is made, which is called the "hay storage" rate. The defendant has a shed for the storage of hay. If a consignee elects to avail himself of it, the railroad will unload and store his hay there for five days at a charge of $1; for a second period of five days $1 is charged; for a third period $1.50; for a fourth and for every subsequent period of five days the charge is $2. There is no allowance for Sundays, holidays, or bad weather. The hay shed in South Boston is too small for the defendant's business, and when it is full the defendant, at its option, stores hay in its cars at the "hay storage" rate. About one-half the hay received in South Boston passes through the hay shed. Rather less than one quarter is ordered out by the consignees for delivery there under the "car service" rules, or is ordered out to some other station of the road. Something more than onefourth of all the hay there received is stored in the cars at the "hay storage" rate.

Practically all the charges here in question are made to compensate the railroad for the use of its cars and tracks beyond that reasonable period during which a railroad must allow the consignee to come and get his goods without charge. A railroad is not obliged to permit the use of its cars for storage. It may require consignees to remove their goods at once, but for its own profit and for public convenience the use is permitted, and compensation therefor is exacted. The railroad directly, and indirectly the public, are benefited by a speedy release of cars, and their speedy return into circulation. This obvious fact is emphasized by the conditions which now exist throughout the United States. The time allowance for delivery at Forest Hills is reasonable, and the court has already held that the charge made for car service there is reasonable also. The railroad is not bound to build a hay shed at Forest Hills or at its stations generally. At its terminal in the great city of Boston it has done so, and 'here it gives facilities for storage which are not given at Forest Hills or elsewhere on the line. The question is thus presented: Does the third section of the interstate commerce act forbid a railroad to provide better facilities at a terminal, one of its most important stations, than at stations in general?

Thus put, the question answers itself. The interstate commerce act was not intended to require that precisely the same accommodation should be made for passenger and freight traffic at every station on a line of railroad, irrespective of the size or importance. Detroit R. R. v. Int. Com. Com'rs, 74 Fed. 803, 822, 21 C. C. A. 103. If the facilities afforded at South Boston were taken away, Forest Hills might be benefited. It is arguable that every country village would be benefited by such a change in the conditions of transportation as would deny to every large city any better service than that obtained by the smallest village. That the defendant should build a hay shed at every one of its stations is out of the question. That it should permit its cars to be used for the storage of hay on the same terms as those now exacted for storage in its hay shed cannot properly be demanded; and, as has been said, the destruction of its hay shed in South Boston cannot be required, even though that could be shown to benefit one

or more small stations upon its line by distributing among them the traffic now concentrated in South Boston. A large city may properly be given facilities, although they make its traffic cheaper and more convenient than that of smaller places.

Moreover, the "hay storage" rate is not necessarily higher than the "car service" rate. If bad weather occurs during the first four days, the period of free delivery is extended accordingly under the car service rule; but no such allowance is made when the hay is in storage. It follows that, if the period of detention be short, the car service rate is lower; if it be long, the advantage is with the hay storage rate.

The plaintiff contends that, even if the defendant be permitted to store hay in its hay shed at storage rates, it cannot use its cars for that purpose. The defendant's hay shed is admitted to be inadequate, and its cars are used to its financial disadvantage, and only as a makeshift. To hold that there now exists an unjust discrimination in favor of South Boston which would be removed by building a larger shed there, and thus increasing the existing discrimination, would be absurd. No bad faith or indirect motive is alleged on the part of the defendant, and it is immaterial that for a time "hay storage" in cars was allowed at Forest Hills and some other stations.

At Charlestown, a station in Boston on the line of the Boston & Maine Railroad, the hay storage rate differs from the rate at South Boston in that 10 days' storage is given for the first dollar charged. If the question arose between South Boston and Charlestown, and if both were stations of the defendant, there might be an unjust discrimination; but Charlestown is not on the defendant's line, and the money there collected goes to the Boston & Maine Railroad, the defendant's competitor. The plaintiff alleges that, by reason of a car service association, so-called, which regulates rates, the defendant is in some way responsible for the charge at Charlestown, and that therefore a discrimination against Forest Hills is involved.

In answer to this it may be said, first, that the hay storage charge at Charlestown is outside the provision of the agreement of the car service association, which deals only with car service, strictly so-called, and not with charges for storage; second, that, while the evidence might show an unjust discrimination against South Boston, and in favor of Charlestown, if both were on the same line, yet that this would not establish a discrimination against Forest Hills, owing to the difference of condition between Forest Hills and either South Boston or Charlestown which is referred to above. The plaintiff does not suffer by a preference of Charlestown over South Boston.

For these reasons, there must be a judgment for the defendant.