## SEABOARD AIR LINE RY. CO. v. NEW ORLEANS EXPORT CO.

(Circuit Court of Appeals, Fifth Circuit.   March 29, 1921.)

No. 3584.

1. **Carriers** ⬤➡30—**Tariffs held to authorize storage charges for goods kept in cars.**

> The tariffs of a railway filed with the Interstate Commerce Commission, which included a storage charge on the goods for export after 20 days' free storage, and provided that such charges were in addition to transportation rate on all property passing over the company's wharves or stored in warehouses or storehouses, or on other property operated by the railway, authorizes the carrier to collect storage charges from goods for export held in its cars more than 20 days; the provision not being limited to goods which had been removed from the cars to warehouses.

2. **Carriers** ⬤➡196—**Amount of recovery of storage charges held for the jury.**

> In action by a railway company for storage charges on goods intended for export, where the number of carloads and the total weight of the goods as set forth in the petition were admitted in the answer, evidence of the dates of arrival of the cars at the port and of the dates when the ships in which the goods were loaded were ready for loading *held* sufficient to require submission to the jury of the amount of storage charges to which the railway company was entitled.

In Error to the District Court of the United States for the New Orleans Division of the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action by the Seaboard Air Line Railway Company against the New Orleans Export Company to recover storage charges. Judgment for defendant on a directed verdict, and plaintiff brings error. Reversed.

Walter J. Suthon, Jr., of New Orleans, La. (Hall, Monroe & Lemann, of New Orleans, La., and James F. Wright, of Norfolk, Va., on the brief), for plaintiff in error.

John D. Miller, of New Orleans, La. (Miller, Miller & Fletchinger, of New Orleans, La., on the brief), for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. The Seaboard Air Line Railway Company (hereinafter styled the plaintiff) brought suit against the New Orleans Export Company (hereinafter styled the defendant) to recover storage charges on 1,070 carloads of cotton seed oil cake, weighing 63,520,-844 pounds, which it alleged had been received at Savannah for export and shipped by certain steamers, which had been berthed at

certain dates set forth in ·Exhibit C to the petition. Said ·storage was claimed under two tariffs filed with the Interstate Commerce Commission; one providing the following charges:

"Cotton seed oil cake in bulk, or in bulk to be sacked by owner when for export, wharfage and handling, including twenty days' free storage (Sundays and legal holidays excepted), one cent per 100 pounds.

"Storage for first ten days or fractional part thereof succeeding the twenty days' free storage, one cent per 100 pounds; storage for each succeeding ten days or fractional part thereof, ¾ cent per 100 pounds."

The other tariff was identical, except that sacking or resacking was to be done by the carrier for 50 cents per ton of 2,240 pounds; the owner furnishing sacks and twine. Each of said tariffs provided:

"The charges shown here will be made and collected by the Seaboard Air Line Railway for the services indicated in addition to the transportation rates on the property herein described passing over the company's wharves or stored in warehouses or storehouses, or on other property operated by the Seaboard Air Line Railway when traffic originates at or destined to: Georgia —All points. * * *.

"The term 'handling,' as used herein, except where otherwise specified herein, means the legal or legitimate expense involved in the movement of the traffic between shipside and cars, or between shipside and storage warehouses of Seaboard Air Line Railway."

Plaintiff alleged that the charges for storage under the above tariffs amounted to $13,721.45, on which $7,500 had been paid, leaving $6,-221.45 due. Said storage was computed upon the length of time each car remained loaded after the expiration of said free storage period, up to the time when the steamer on which the carload was to be loaded for export was berthed and ready for loading.

The court, at the conclusion of the plaintiff's testimony, directed a verdict for the defendant. It appears from the record that the court directed the verdict upon its interpretation of the tariffs, to the effect that storage on the cotton seed oil cake began only after the freight was unloaded from the cars, either on the wharf or in the storage warehouses, for the time it remained on said wharves or in said warehouses after 20 days' free storage had been allowed there.

The plaintiff insists that this was an erroneous interpretation of the tariffs; that they permitted storage to be charged when the cake was held in cars for more than 20 days (Sundays and legal holidays excepted), after the arrival of said cars, waiting for the placing of the vessel in which the contents of said cars were to be loaded, as well as where said contents were unloaded from the cars upon the wharves, or put in the storage warehouses.

[1] 1. We think that the tariffs under which this storage is claimed provide for charges, after transportation ended, and after the 20 days' free storage time had elapsed, for the use of said cars to store said cake awaiting the arrival of the several vessels. Clearly, after the arrival of said cars at Savannah and notice of such arrival to the defendants, and the expiration of said 20 days, the relation of said plaintiff to said freight was not that of a carrier, but was that of a warehouseman. The freight charge is intended to compensate for the transportation. One of the provisions of the tariff is that the storage charges

will be made on property "passing over the company's wharves, or stored in warehouses or storehouses, or on other property operated by the Seaboard Air Line Railway."

That storage in cars is contemplated by the Interstate Commerce Commission is apparent from a number of utterances in their decisions:

"* * * Carriers are not obliged to provide storage in cars, but if they do so they are entitled to reasonable compensation." Pittsburg & Ohio Mining Co. v. Baltimore & Ohio R. R. et al., 40 Interst. Com. Com'n R. 408.

"The rate of freight includes a delivery of the property; it does not include the storage of the property after a reasonable opportunity has been afforded the consignee to receive it. When, therefore, the carrier, through failure of the consignee to promptly remove the property, is obliged to store the same either in its cars or in its warehouses, it performs a service not embraced in the rate and for which additional compensation may properly be exacted." New York Hay Exchange Association v. Pennsylvania Railroad Co., 14 Interst. Com. Com'n R. 178, 184.

See Michie v. New York, N. H. & H. R. Co. (C. C.) 151 Fed. 694, 696.

Clearly, if one exporter was not charged for storage in cars, although his property was kept therein, awaiting the arrival of his vessel, when his competitor was charged with storage because his cars had been unloaded in the warehouse during the same period of time, the shipper enjoying the free use of the cars would have received a marked advantage over the one charged for storage in warehouse. Where facilities are furnished to a shipper, they should be paid for. Mechanical & Chemical Pulp Division, etc., v. B. & O. R. R. Co., 41 Interst. Com. Com'n R. 506; Plymouth Coal Co. v. Delaware, L. & W. R. R. Co., 36 Interst. Com. Com'n R. 76; Plymouth Coal Co. v. Lehigh Valley Ry. Co., 36 Interst. Com. Com'n R. 140.

[2] 2. It is further insisted by the defendant that, regardless of the true construction of the tariffs, there was no definite evidence of when said cars arrived and were placed on storage tracks in Savannah, or when said vessels in which their contents were to be loaded were placed for receiving the same; therefore there was no sufficient evidence upon which a verdict could have been found. From the recitals in the bill of exceptions it is evident that the court would not have directed a verdict upon the ground of a want of sufficient evidence to take the case to the jury, if he had been of the opinion that the storage charges were permitted under a proper construction of the tariffs.

We do not think that there was an absence of evidence sufficient to require the withdrawal of the case from the jury upon the issues of fact therein. The number of cars on which storage was claimed, and the quantity of cotton seed oil cake, and the number of cars loaded in each of the vessels in which shipped, with the time of arrival and time of detention, was set out in Exhibit C of the petition, as stated in paragraph 12 thereof.

The number of cars embraced in said Exhibit C and the total weight of the oil cake therein set forth were admitted to be correct in the answer to said paragraph 12, and while for lack of information the

defendant denied the other allegation set forth in said paragraph 12, which averred the quantity of said cake and dates upon which it was delivered to the several steamers, there was produced an exhibit made up by the defendant, stating the dates of the arrival notices of the several cars which were loaded upon the different steamers mentioned in said Exhibit C, with the weights and also the number of days elapsing between the date of said arrival notices and the date when said steamer was berthed, which it was testified without contradiction was the time when said storage charges terminated.

The testimony of the harbor master showed that each of the ships mentioned in said Exhibit C, with the exception of the City of St. Louis, were berthed for loading on the several dates stated in said Exhibit C of his own knowledge, and as to the City of St. Louis he testified, without objection, that the same was berthed on the date mentioned in said Exhibit according to information furnished him by the boarding officer of the United States custom house. Furthermore, the arrival of each of said cars at Savannah was proved by the trainmen handling the same, and that they were all delivered on the storage tracks within 24 hours of their arrival.

There was sufficient evidence in said Exhibit No. 1 of Reeb's testimony coming from the custody of the defendant, and upon which it had been negotiating with the plaintiff, taken with the testimony of the other witnesses, to furnish a basis for submission to the jury. If the storage in cars prevented the sacking of the cake, in time, and thus occasioned any damage to the defendant, while it might afford a basis for a plea of recoupment, it would not be evidence that no storage had taken place. But there is no proof in this record of any delay in sacking having been caused, or damage suffered, on this account.

3. We find no error in the rulings of the court on the admission or rejection of evidence. Northern Pac. Ry. Co. v. Keyes et al. (C. C.) 91 Fed. 47; Wigmore on Ev. p. 1230.

The answers of the witness Moylan, which were excluded, were clearly hearsay.

We think, on the whole case, that the direction of the verdict was error, and there should be a new trial.

Judgment reversed.