LOUISVILLE & N. R. CO. et al. v. EMPIRE STATE CHEMICAL CO.

(Circuit Court, N. D. Georgia.   June 14, 1911.)

No. 50.

1. CARRIERS (§ 100*)—TRANSPORTATION OF FREIGHT—DELIVERY OF CARS—DEMURRAGE—DEFENSES.

In a carrier's action for demurrage, an allegation that the carrier delivered cars to defendant in such large numbers and so unreasonably concentrated them as to prevent defendant from handling them promptly, choking and overwhelming defendant's side track with cars, when they knew it was impossible for defendant to handle and unload them, stated a sufficient defense.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–433; Dec. Dig. § 100.*

Quick Dispatch, demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 342.]

2. SET-OFF AND COUNTERCLAIM (§ 22*)—NATURE OF SET-OFF.

In a statutory action by a railway company for demurrage under a state law, defendant could not set off a claim for damages for plaintiff's failure to promptly furnish cars according to its duty as a carrier, under the state law, under which, to justify a set-off, the claims must not only be mutual, but must be of the same character of demand.

[Ed. Note.—For other cases, see Set-Off and Counterclaim, Dec. Dig. § 22.*]

At Law.   Action by the Louisville & Nashville Railroad Company and Atlantic Coast Line Railroad Company against the Empire State

---

Chemical Company. On demurrer to defendant's answer. Overruled in part and sustained in part.

Jos. B. & Bryan Cumming and Cobb & Erwin, for plaintiffs.

E. K. Lumpkin, for defendant.

NEWMAN, District Judge. This case is now being heard on a demurrer to the defendant's answer.

The suit is brought by the plaintiffs against the defendant to recover certain demurrage charges amounting to $2,083 on several car loads of freight delivered on the defendant's spur tracks at its manufacturing plant.

The answer sets up, as amended: That the defendants entered into a contract with the plaintiffs which had in view the establishment, by the defendant company, of a plant on the line of the Georgia Railroad, near Athens, Ga., plaintiffs to build, maintain, and operate spur tracks, from the said railroad, over the lands of defendant to and along defendant's plant, and to give defendant good and prompt service in the transportation and delivery of freight to and from defendant's plant, in furnishing empty cars, when requested, at points where phosphate rock and other materials used by defendant were purchased or delivered to plaintiffs, and at defendant's plant to be loaded with defendant's products, and good and prompt service in receiving said cars, when loaded, and transporting same to their destinations, when notified by defendant of their readiness.

That, relying and acting on this agreement, defendant built and established its plant at the point agreed upon, and has since been operating and carrying on its business of manufacturing guanos and fertilizers. That plaintiffs, for the purpose of rendering defendant efficient and prompt service, built two spur tracks, for the use of defendant, over defendant's yards, and that defendant built a platform in front of its building, and another between said spur tracks, thus providing sufficient spur track and platform facilities for the expeditious and proper handling of all cars of freight delivered to or to be hauled from its plant, if delivered in a reasonable and proper time and manner, within the free time provided by law, and that defendant would have done so and plaintiffs would have had no cause of complaint on account thereof had it not been for the illegal conduct of plaintiffs and their violation of their agreement with defendants and their disregard of their duty as common carriers.

That, beginning with July, 1906, and constantly and continuously from that time until September 27, 1907, plaintiffs utterly failed to furnish empty cars promptly or in a reasonable time to transport the materials purchased by defendant and used by them in the manufacture of their product, as requested, throughout a number of months, but unreasonably concentrated and delivered them practically all at one time, during the months of September, October, and November, 1907. That by plaintiffs' action 340 cars of freight, which was all heavy and of a character requiring time to handle, were thrown, in this short period of time, on defendant. That on several occasions as many as

20 cars were delivered by plaintiffs in a single day, thus choking and overwhelming defendant's side tracks and capacity for handling. That such constant influx and delivery of cars by plaintiffs to defendant was unusual and abnormal, and unreasonable in manner of delivery, and in disregard of their duty as common carriers and of their agreement with defendant, and that plaintiffs knew that the necessary result of such action and delivery of said freight in such unreasonable manner would be delay in handling said cars, and that it would be impossible for defendant to handle and unload such a large and unreasonable number of cars thus suddenly thrown upon it by plaintiffs, and that said delays were the natural and necessary result of such conduct on the part of plaintiffs.

That defendant was further delayed and retarded in handling many of said cars by reason of plaintiffs having thus so congested defendant's spur tracks with such large number of cars that plaintiffs could not and did not place many of said cars close and convenient for defendant to unload them, in consequence of which defendant would have to truck and carry the contents of said cars a much longer distance than would otherwise have been necessary.

Defendant further alleges: That it manufactures its products during the summer, fall, and winter, to have them ready for sale and delivery in the late winter and spring, at which time its products are mostly in demand, their shipping season, beginning in February, being crowded into 80 or 90 days, which facts were well known to plaintiffs.

· That during said shipping season it is necessary for defendant to have a large number of cars per day (except Sunday) to be loaded with its product, which was well known to plaintiffs and was in contemplation at the time of the making of their said agreement with defendant. That during the shipping season of 1907 defendant requested plaintiffs to furnish at its plant 15 cars per day, and during March 20 cars per day (except Sundays), but that plaintiffs utterly failed to do so, and never furnished but a small portion of the cars asked for.

That during said time it was necessary for defendant to have, and defendant did have, a superintendent and a large number of hands employed for the purpose of loading said cars, which were to be furnished by plaintiffs, but which were not delivered within a reasonable time. That the expense to defendants for such superintendent and hands was $140 per day, and that said illegal conduct of plaintiffs in not delivering cars as they should, so they could be loaded, damaged and entailed a loss and expense to·defendant of a large amount of money, which in three specified days amounted to $452.

That during said time, not only frequently but constantly, even when said cars were furnished to defendant and loaded, and plaintiffs notified of their readiness for shipment, and, after the cars were turned over to plaintiffs as common carriers for transportation, plaintiffs did not haul them from defendant's spur tracks promptly or

within a reasonable time, but allowed said cars to stand and incumber defendant's said tracks for from two to seven days at a time.

Also that during said time, and on a number of specific occasions, without the consent and over the protest of defendant, plaintiffs shunted into and placed upon defendant's said spur tracks cars loaded with other people's freight, and on several occasions whole trains with which defendant had no connection whatever were placed on and over its said spur tracks, and by reason thereof defendant's spur tracks were obstructed and choked, pushing the empty cars which had been placed by plaintiffs to be loaded by defendant, and frequently while defendant was engaged in loading same, beyond the place of loading, that frequently during said time defendant's spur tracks were so choked and blocked with foreign freight cars and trains that defendant could not attend to its business of loading cars.

Defendant further states that said disregard of their legal duty as common carriers and disregard of their said agreement continued during all this time, notwithstanding plaintiffs well knew and were constantly informed by defendant of the disastrous effect and damage such conduct on their part would cause defendant and its business by causing defendant to lose the sale of hundreds of tons of its products, thereby damaging and losing to it thousands of dollars. That defendant frequently and constantly requested, urged, and implored plaintiffs not to continue such conduct, which would cause great damage and loss to it and its business, but such conduct was presistent and continuous, and did injure and damage defendant in the sum of $9,629, which was the natural result of such breaches of duty on the part of the plaintiffs.

Defendant then gives the names of some of the parties for whom it had manufactured and assembled goods which could not be delivered on account of the acts of the plaintiff railroad companies, and prays judgment against plaintiffs for the amount of its counterclaim.

The foregoing is a synopsis or abbreviation of defendant's answer, but states what is deemed necessary for present purposes.

[1] That part of defendant's answer which claims that the plaintiffs delivered cars to them in such large quantities, and so unreasonably concentrated them as to prevent defendant from handling them promptly, choking and overwhelming defendant's side tracks with cars, when they knew that it was impossible for defendant to handle and unload them, constitutes, I think, a good defense, if properly proven. That is to say, if the plaintiffs, instead of delivering the cars on the defendant company's tracks at its plant in reasonable numbers and in a proper way, so that they could be handled by the defendant company, concentrated and delivered the same in such great numbers that, even with reasonable and proper effort on the part of defendant, they could not be handled and unloaded promptly, this would seem to be a good defense against plaintiffs' claim for demurrage, and the demurrer to that part of the answer setting up this defense will be overruled.

[2] That part of defendant's answer which claims a set-off against plaintiffs because of their failure to promptly furnish cars to it does

not seem to me to be a proper plea by way of set-off to this suit. This action, as I understand it, is one authorized by the statutes of Georgia and the railroad commission of this state. It is consequently a statutory cause of action. It is well settled in Georgia that in order to justify a set-off the claims must not only be mutual, but they must be the same character of demand, contract against contract, tort against tort, etc. Even if we concede that plaintiffs' claim for demurrage is not for a penalty strictly construed, but is partly compensatory and partly in the nature of a penalty, I am unable to see how the defendant's counterclaim is of the same character as the plaintiffs' demand. Assuming even that penalty could be set off against penalty, still the defendant, as I understand its answer, does not put its counterclaim in as one based on the statute at all. It is rather a general claim for damages caused to it by breach of duty growing out of the general arrangement and agreement between the parties when the fertilizer plant was established on the line of plaintiffs' road.

Without further discussion of the case, it is enough to say that I am satisfied, after a careful examination of the matter, that the claim of the plaintiffs and the counterclaim which is proposed to be set up by the defendant are not the same class of claims; consequently the latter cannot be pleaded as a set-off to the former.

An order may be taken overruling and sustaining the demurrer in accordance with what has been stated.