## Louisville & Nashville Railroad Company v. A. Waller & Company.

(Decided September 25, 1913).

### Appeal from Henderson Circuit Court.

1. Carriers—Demurrage Charges—Right of Consignee to Set-off Claim for Damages.—In an action by a common carrier to recover demurrage charges, the consignee pleaded and proved in defense of the action that the demurrage charges resulted from a failure of the carrier to deliver to it cars, which, if delivered, would have prevented the creation of demurrage fees, and this defense was held valid.

2. Carriers—Demurrage Charges—Right of Consignee to Set-off—Damages.—In this case the claim for demurrage charges asserted by the carrier was based on rules and regulations adopted by the railroad companies of this State many years ago, no State or Federal statute or regulation made in pursuance thereof being relied on, and so the question whether the consignee would have the right to off-set demurrage charges by a claim for damages if the demurrage charges arose and were asserted under a Federal statute or regulation made in pursuance thereto, or by virtue of the fact that they appeared in its public tariff rate, is not decided.

J. C. WORSHAM, TRABUE, DOOLAN & COX and CHAS H. MOORMAN for appellant.

CLAY & CLAY and DORSEY & DORSEY for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant as plaintiff below brought this suit against the appellee to recover the sum of $410 for car service demurrage. It is averred in the petition that "the plaintiff, and other railway companies in Kentucky,

some years ago, established rules for the handling of their freight cars with a view to promote the speedy loading and unloading of same, to facilitate traffic and commerce, and enable them to keep their cars in use, which rules were well known to the defendant and had been acted upon by it in its dealings with the plaintiff prior to the beginning of the claim herein set up. By said rules, when cars were furnished to the patrons of the road to be loaded or unloaded, it was provided that for every twenty-four hours, or fraction thereof, which each car was held beyond forty-eight hours, excluding Sundays and legal holidays, after it was placed for the use of the patron, he should pay $1.00 to the road furnishing the car.

"On the 23rd of September, 1906, and on various dates thereafter up to and including April 9, 1907, the plaintiff furnished to the defendant at its special instance and request various cars loaded with freight for the defendant, but it failed to unload them within the time prescribed by said rules, and held them for such time beyond the forty-eight hours it was entitled to hold them as to amount in the aggregate to 410 days, whereby the defendant became indebted to the plaintiff in the sum of four hundred and ten dollars for the detention of said cars. The defendant was duly notified of the placement of said cars for unloading, but notwithstanding held them beyond the time allowed, as above set forth."

In an answer, counterclaim and set-off, the appellee set up its defense in six paragraphs, and while not controverting the claim sued on, sought to avoid a recovery by the matter asserted in its counterclaim and set-off.

The lower court sustained a demurrer to the first, second, third and fourth paragraphs of the answer and counterclaim, but overruled the demurrer to the fifth and sixth paragraphs in which it was averred that the "Defendant states that the demurrage, on account of which the plaintiff sues, accrued through no fault of this defendant, but accrued solely and only because of the failure and refusal of the plaintiff to furnish it cars in which to ship its grain. That its elevator was full, and it could not unload the grain from the cars in question until it was furnished cars in which to ship the grain in the elevator, which the plaintiff failed and refused to furnish, though requested so to do, and it also refused to permit the defendant to unload and reship in the same cars for which demurrage is charged. If it had

furnished such cars or permitted defendant to unload
and reship in the same cars, this defendant would and
could have unloaded the grain in the cars on account of
which this action is brought within the time allowed for
that purpose, and said demurrage would not have ac-
crued.

"The cars used for which demurrage is charged in
the petition were weak, dilapidated, and of an inferior
quality, such as were not fit to use, and could not be used
and were not used in the regular course of the plaintiff's
business. The said cars were shop cars, and were only
used by the plaintiff to haul the grain from the railroad
wharfboat on the Ohio River to the elevator of the de-
fendant, and to the Henderson Elevator, a distance of
about half a mile. Said cars were such as the plaintiff,
under the rules mentioned in the petition, had no right
to charge demurrage for, and for this reason this de-
fendant is not liable for said demurrage, and the plaint-
iff has no right to charge for or to collect said demurr-
age."

On the issues presented by the petition and in the
fifth and sixth paragraphs of the answer, which was con-
troverted by a reply, the parties went to trial before a
jury. During the progress of the trial, which took place
four years after the answer had been filed and the de-
murrer sustained to the paragraphs mentioned, and
after the evidence for the appellee had been heard, the
appellant moved the court to suspend the trial and per-
mit it to prepare and file an amended reply, setting up
that during the time the charges for demurrage sued
for, accrued "there was an unusual, unforseen and un-
precedented demand for cars on plaintiff's line of rail-
road; that said condition existed on all railroads
throughout the United States at said time; that the
plaintiff had on hand at such times a sufficient equip-
ment to take care of and handle its usual and ordinary
business; that during said months it furnished the de-
fendant with its pro rata proportion of plaintiff's equip-
ment of cars; and that any failure, refusal or inability
to furnish defendant more cars than it did furnish it
was due to the said unprecedented, unusual and unfor-
seen press of business."

The bill of exceptions shows that the proposed amend
ment was not reduced to writing or tendered, and the
motion to give time to prepare and file it was overruled

on the ground that the issues should have been made up earlier.

After the evidence was in, the court instructed the jury in substance that it was the duty of the appellant, upon reasonable notice, to furnish appellee a reasonably sufficient number of cars to supply its demand, and if they believed from the evidence that during the time the items of demurrage accrued the appellant, after reasonable notice, failed to furnish the required cars, and by reason of such failure it was unable to unload and release the cars upon which demurrage was charged, they should not allow any demurrage on such cars as were held on account of the failure of the appellant to supply requested cars.

The only instruction offered by appellant was based on the amended reply it proposed to, but never filed, and of course the instruction was properly refused. The jury returned a verdict in favor of appellant for an item of demurrage amounting to six dollars about which there was no dispute, and complaining of the rulings of the lower court that in effect denied it the right to recover the full amount claimed, it brings the case here for review.

No excuse was offered for the long delay in tendering the amended reply proposed to be offered during the trial, and we are not disposed to say that under the circumstances the trial court abused its discretion in refusing to give time during the trial to prepare the suggested reply.

With this matter out of the way the only issue in the case—as the amount of the claim for demurrage was admitted—was the right of appellee to defeat the demurrage by the defense that it was occasioned by the failure of the appellant to furnish it sufficient cars to enable it to unload the cars upon which demurrage was charged before any demurrage accrued, and this really resolves itself into the question whether or not the consignee has the right in a suit by a carrier for demurrage fees to offset the claim by damages that he has suffered by the negligence of the carrier connected with its claim for demurrage or its failure to perform a duty which if performed would have prevented the accrual of demurrage charges. Assuming, therefore, that the defense asserted by appellee was valid and made out by the evidence, and that the issue arising on this defense was properly submitted to the jury as we may do upon the authority of

I. C. R. Co. v. River & Rail Coal Co., 150 Ky., 489, we shall only consider the question relating to the right of a consignee to off-set demurrage charges by a valid claim that he has against the carrier.

In disposing of this question it is important to keep in mind the fact that the claim for demurrage sued on was not based directly or inferentially upon any Federal or State statute conferring the right to make this charge, or upon any rule or regulation of the carrier made under authority of any such statute, nor was the charge contained in or made a part of its public tariff rates, but was rested solely on certain rules and regulations adopted perhaps twenty years ago by railroad companies doing business in the State, by which they agreed that certain fixed demurrage charges should be made against consignees for their failure to release within a specified time cars consigned to them. This rule or regulation of the railroad companies was held to be valid and enforcible by this court in Kentucky Wagon Manufacturing Company v. Ohio & Mississippi Railway Co., 98 Ky., 152.

This being the basis of the action, it does not seem necessary that we should consider the nature of demurrage charges in their relation to or as a part of the charge for transportation, or what the rule should be if the charges were contained in or made a part of the public tariff rates of the carrier, or were made pursuant to any Federal or State statute or rule or regulation made thereunder, or whether if they were so made it would be permissible to defeat them by a claim for damages, such as is asserted in this case. Nor has the Interstate Commerce law any application to the case, as it was not in any manner pleaded or relied on in the lower court by the railroad company.

We may, however, observe in passing that in an opinion by the Interstate Commerce Commission, in the case of Crescent Coal & Mining Co. v. Baltimore & Ohio Railroad Co., Vol. 20, Interstate Commerce Commission Reports, it was said that "it has been uniformly held by this commission that a shipper or consignee may not be required to pay a demurrage charge unless the carrier's tariff provided for the same in clear and specific form and manner." It would, therefore, seem that if the railroad company had relied on the Federal statute or any rule or regulation of the Interstate Commerce Commission to entitle it to recover in this case, it must

have failed, because of the failure to set out that the demurrage charges were published in its tariff sheet.

As the rights of the parties are to be settled independent of recent Federal legislation, and such rules and regulations as may have been established thereunder and according to principles that were formerly well established, we have no difficulty in adjudging that the consignee in this case had the right to assert against the charge for demurrage the claim for damages set up in this counterclaim. In Louisville & Nashville R. R. Co. v. Empire State Chemical Co., 189 Fed., 174, the railroad company brought an action against the chemical company to recover demurrage charges. In its answer the chemical company set up two defenses, one was that the railroad company over its protest delivered cars on which demurrage was charged to it in such large quantities that it could not unload them expeditiously or within the time allowed to save it from demurrage fees, and the other was that the railroad company failed to furnish it sufficient cars to enable it to carry on its business, to its damage in a large sum. In considering these defenses the court said that the first one stated a good defense against the claim for demurrage fees, but that the second did not because it was not authorized by the Georgia practice. It apears from the opinion that in disposing of these questions no doubt was intimated of the right of a consignee to assert a valid claim against demurrage fees.

In Missouri Pacific Ry. Co. v. Peru-Van Zant Implement Co., 73 Kansas 295, 87 Pac., 80, the court, after considering numerous authorities, said:

"Where a common carrier becomes liable to the consignee of goods for damages to the property received in transit and the amount of such damages equals or exceeds the freight bill on the damaged goods, the lien of the carrier is thereby extinguished and the consignee is entitled to the possession of such goods without payment of freight, and in such a case refusal of the carrier to deliver the goods to the consignee upon demand constitutes a conversion."

In Dyer v. Grand Trunk Railway Co., 42 Vt., 441, 1 Am. Rep., 350, in holding that a shipper had the right to set off against a charge for transportation a claim for damage to the goods received in transit, the court said:

"There would seem to be no good reason why the liability of the carrier to the freighter for the damage

accruing through his fault, in the carriage of the property, should not be asserted and determined by way of defense to his claim for freight, as well as by a cross action for such damage."

In Boggs v. Martin, 13 B. Mon., 238, in sustaining the right of a consignee to set-off a claim for damages growing out of injury to the goods by the negligence of the carrier against the lien of the carrier for the freight charges, the court said:

"If the carriers were liable on account of any damage the goods had sustained, there seems to be no good reason why they should be permitted to recover the full amount of the compensation that they would have been entitled to if their contract had been strictly complied with and the consignee compelled to resort to a cross action to obtain redress for injury to the goods. * * * The consignee in the present case had a right to prove, for the purpose of reducing the amount of freight due to the carriers, that the articles had not been delivered in good order, * * * and had a right to introduce proof to show the extent of the damage to the goods for the purpose of reducing the amount of the freight actually due or making it appear that nothing was due on that account, thereby manifesting that the defendants had no right to the possession of the goods."

In Hutchinson on Carriers, third edition, section 799, the rule is thus announced: "The party liable for the freight, however, when sued, may set up, in answer to the claim, any breach by the carrier of his contract, and will be allowed to set off any loss or damage to the goods for which he is liable, or sustained by him in consequence of unreasonable delay in their carriage or delivery." To the same effect is Elliott on Railroads, Vol. 4, Sec. 1567a.

Many of the authorities we have cited relate to the right of a consignee to set off his claim for damages against the charge for freight, but if this is allowable, as the uniform current of authority shows it is, there can be no doubt of the right of a shipper to set off his claim for damages against a charge asserted for demurrage, which can certainly occupy no better attitude than a claim for transportation fees.

The judgment is affirmed.